RECORD NO. 14-2160

In The

# United States Court of Appeals
## For The Fourth Circuit

## LAVERNE JONES; STACEY JONES, f/k/a Stacey Ness; KERRY NESS, Individually and on behalf of the Certified Class,

*Plaintiffs – Appellants*,

**v.**

## BERNALDO DANCEL; AMERIX CORPORATION; 3C INCORPORATED; CAREONE SERVICES, INCORPORATED; ASCEND ONE CORPORATION,

*Defendants – Appellees.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE

———————————

## REDACTED BRIEF OF APPELLANTS

———————————

G. Oliver Koppell
LAW OFFICES OF G. OLIVER
  KOPPELL & ASSOCIATES
99 Park Avenue, Suite 330
New York, New York 10016
(212) 867-3838

*Counsel for Appellants*

Peter A. Holland
THE HOLLAND LAW FIRM, P.C.
910 Towne Centre Boulevard, Suite 250
Post Office Box 6268
Annapolis, Maryland 21401
(410) 280-6133

*Counsel for Appellants*

Gregory S. Duncan
LAW OFFICE OF
  GREGORY S. DUNCAN
412 East Jefferson Street
Charlottesville, Virginia 22902
(434) 979-8556

*Counsel for Appellants*

Joseph S. Tusa
TUSA PC
53345 Main Road, Suite 10-1
Post Office Box 566
Southold, New York 11971
(631) 407-5100

*Counsel for Appellants*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _14-2160_       Caption: _Laverne Jones, et al. v. Bernaldo Dancel, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Laverne Jones_
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                          ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                      ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:


5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:


6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:


Signature:  /s/ Joseph S. Tusa                          Date:   November 5, 2014

Counsel for:  Appellants

## CERTIFICATE OF SERVICE
**************************

I certify that on   November 5, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Lawrence Greenwald, Esq.
Brian L. Moffet, Esq.
Gordon, Feinlblatt, Rothman,
  Hoffberger & Hollander, LLC
233 East Redwood Street
Baltimore, MD  21202-3332


/s/ Joseph S. Tusa                                     November 5, 2014
          (signature)                                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _14-2160_    Caption: _Laverne Jones, et al. v. Bernaldo Dancel, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Stacey Jones_
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.      Does party/amicus have any parent corporations?                          ☐YES ☑NO
        If yes, identify all parent corporations, including grandparent and great-grandparent
        corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                              ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Joseph S. Tusa                          Date:  November 5, 2014

Counsel for:  Appellants

# CERTIFICATE OF SERVICE
**************************

I certify that on   November 5, 2014   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Lawrence Greenwald, Esq.
Brian L. Moffet, Esq.
Gordon, Feinlblatt, Rothman,
  Hoffberger & Hollander, LLC
233 East Redwood Street
Baltimore, MD  21202-3332

/s/ Joseph S. Tusa                                        November 5, 2014
(signature)                                                      (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. 14-2160       Caption: Laverne Jones, et al. v. Bernaldo Dancel, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Kerry Ness
(name of party/amicus)

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Joseph S. Tusa                          Date:    November 5, 2014

Counsel for:  Appellants

# CERTIFICATE OF SERVICE

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

I certify that on    November 5, 2014    the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Lawrence Greenwald, Esq.
Brian L. Moffet, Esq.
Gordon, Feinlblatt, Rothman,
 Hoffberger & Hollander, LLC
233 East Redwood Street
Baltimore, MD  21202-3332

/s/ Joseph S. Tusa                                      November 5, 2014
_____(signature)_____                          _____(date)_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..............................................................................v

STATEMENT OF SUBJECT MATTER
AND APPELLATE JURISDICTION .......................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................................2

STATEMENT OF THE CASE
AND STATEMENT OF FACTS...............................................................4

    The "Liability Award" .................................................................7

    The "Punitive Damages Award" ................................................10

    The "Fee Award".......................................................................10

SUMMARY OF THE ARGUMENT .................................................................14

ARGUMENT ...............................................................................................18

    I.      STANDARDS OF REVIEW...........................................................18

          A.    STANDARDS OF APPELLATE REVIEW OF DISTRICT COURT
              ORDERS TO VACATE ARBITRATION AWARDS.............................18

          B.    STANDARD OF REVIEW OF ARBITRAL AWARDS
              GENERALLY, AND AWARDS EVALUATING FEDERAL
              STATUTORY REMEDIES SPECIFICALLY .......................................18

          C.    THE SUPREME COURT HAS GUARANTEED CROA'S
              STATUTORY REMEDIES IN ARBITRATION ...................................20

    II.    THE FINAL AWARD'S DENIAL OF CROA ACTUAL
          DAMAGES SHOULD BE VACATED.............................................21

i

A.   THE ARBITRATOR HELD THAT LIABLE RESPONDENTS VIOLATED CROA SECTIONS 1679C, 1679D, 1679E AND RECEIVED ADVANCE PAYMENTS ................................................21

B.   CROA *MANDATES* ACTUAL DAMAGES FOR ALL CROA VIOLATIONS .................................................................22

C.   *EVERY* COURT HAS AWARDED ACTUAL DAMAGES FOR ADJUDICATED CROA VIOLATIONS..............................................23

D.   WHETHER CLASS MEMBERS' PAYMENTS WERE "VOLUNTARY" IS IRRELEVANT UNDER CROA SECTION 1679G(A)(1)(B), BUT WAS NONETHELESS REQUIRED BY THE ARBITRATOR ......................................................25

E.   THE ARBITRATOR CONFUSED AND COMBINED CROA SECTIONS 1679g(a)(1) AND SECTION 1679a(3)..........................27

F.   EVEN IF CROA'S ACTUAL DAMAGE PROVISIONS REQUIRE PAYMENTS TO BE INVOLUNTARY, THE ARBITRATOR HELD THE MONIES PAID TO LIABLE RESPONDENTS WERE NOT VOLUNTARY ..............................................................29

G.   THE ARBITRATOR HELD THAT LIABLE RESPONDENTS WERE PAID "FAIR SHARE" FOR CREDIT REPAIR SERVICES PROVIDED TO THE CLASS ..........................................................31

H.   THE ARBITRATOR'S FINAL AWARD WAS COLORED BY HIS NOTIONS OF JUSTICE ...............................................35

I.   THE ARBITRATOR IGNORED MARYLAND'S STATUTORY PROHIBITION AGAINST "VOLUNTARY PAYMENTS" BY DMP PROVIDERS OR SERVICES ..........................................................37

II.   THE FINAL AWARD'S DENIAL OF ATTORNEYS' FEES AND COSTS SHOULD BE VACATED ...............................................38

   A.   THE FEE AWARD WAS DEPENDENT ON THE ARBITRATOR'S DENIAL OF CROA ACTUAL DAMAGES TO THE CLASS.........................39

   B.   CROA REQUIRES THE PAYMENT OF REASONABLE ATTORNEYS' FEES ....................................................................................39

   C.   THE ARBITRATOR REFUSED TO FOLLOW THE *PERDUE* LODESTAR RULES...................................................................................40

   D.   THE ARBITRATOR DID NOT APPLY THE *JOHNSON* FACTORS .................42

   E.   THE ARBITRATOR DOUBLE-COUNTED HIS REDUCTION OF ATTORNEYS' FEES...............................................................................50

   F.   THE ARBITRATOR'S FEE AWARD RELIED ON A VACATED DECISION...............................................................................................51

   G.   THE ARBITRATOR CONTRADICTED HIS OWN RULINGS TO DENY COSTS TO CLASS COUNSEL....................................................................55

        1.   The Arbitrator's Reason for Denying Costs was Irrational ......55

        2.   The Arbitrator Ignored the Law and the Purpose of Expense Awards in Denying Class Counsel an Award of Out-Of-Pocket Expenses.............................................................57

        3.   The Arbitrator Held that a "Clawback" of Costs Incurred by Class Counsel was Inappropriate, then Did So Anyway ...................................................................................58

   IV.  THE DISTRICT COURT'S "CURSORY REVIEW" OF PLAINTIFFS' MOTION TO PARTIALLY VACATE WAS REVERSIBLE ERROR ....................................................................59

CONCLUSION ...................................................................................................61

REQUEST FOR ORAL ARGUMENT ..................................................................65

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Almendarez v. J.T.T. Enters. Corp.*,
    2010 U.S. Dist. LEXIS 88043 (D. Md. Aug. 25, 2010) .......................... 57-58

*Amerix Corp. v. Jones*,
    2012 U.S. Dist. LEXIS 5204 (D. Md. Jan. 17, 2012) ...................................5

*Amerix Corp. v. Jones*,
    457 Fed. Appx. 287 (4th Cir. 2011) .................................................5

*Anderson v. Morris*,
    658 F.2d 246 (4th Cir. 1984) ..................................................44, 45

*Asmar v. Benchmark Literacy Group, Inc.*,
    2005 U.S. Dist. LEXIS 23197 (E.D. Mich. Oct. 11, 2005)..........................24

*Asmar v. Benchmark Literacy Group, Inc.*,
    2007 U.S. Dist. LEXIS 22166 (E.D. Mich. Mar. 28, 2007)....................24, 39

*AutoPartSource, LLC v. Bruton*,
    2013 U.S. Dist. LEXIS 99396 (E.D. Va. Jul. 16, 2013)...............................41

*Barber v. Kimbrell's, Inc.*,
    577 F.2d 216 (4th Cir.), *cert. denied*,
    439 U.S. 934, 99 S. Ct. 329, 58 L. Ed. 2d 330 (1978) .....................42, 43, 44

*Bell v. Balt. Co.*,
    550 F. Supp. 2d 590 (D. Md. 2008)...............................................48

*Bender v. Newell Window Furnishings, Inc.*,
    2014 U.S. App. LEXIS 5213 (6th Cir. 2014) .................................54

*Best Buy Co. v. AU Optronics Corp.*
*(In re TFT-Lcd Flat Panel Antitrust Litig.)*,
    2014 U.S. Dist. LEXIS 32207 (N.D. Cal. Feb. 3, 2014)...............................54

*Best Med. Int'l, Inc. v. Eckert and Ziegler Nuclitec GmbH*,
    505 Fed. Appx. 281 (4th Cir. 2013) .........................................................16, 43

*Best Med. Int'l, Inc. v. Eckert and Ziegler Nuclitec GmbH*,
    565 Fed. Appx 232 (4th Cir. 2014).........................................................43

*Brown v. Nucor Corp.*,
    2009 U.S. App. LEXIS 22224 (4th Cir. Aug. 7, 2009) .................................34

*Bywaters v. United States*,
    670 F.3d 1221 (D.C. Cir. 2012).........................................................16, 40, 41

*Carte Blanche (Singapore) Pte. v. Carte Blanche Int'l*,
    888 F.2d 260 (2d Cir. 1989) .........................................................23

*City of Burlington v. Dague*,
    505 U.S. 557 (1992).........................................................40

*Coffee Beanery, Ltd. v. WV, L.L.C.*,
    300 Fed. Appx. 415 (6th Cir. 2008) .........................................................27, 38

*Comedy Club, Inc. v. Improv West Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) .........................................................19

*CompuCredit Corp. v. Greenwood*,
    132 S. Ct. 665 (2012).........................................................*passim*

*Daly v. Hill*,
    790 F.2d 1071 (4th Cir. 1986) .........................................................57, 58

*Dewan v. Walia*,
    544 Fed. Appx. 240 (4th Cir. 2013) .........................................................*passim*

*Eastern Associated Coal Corp. v. Dir., OWCP*,
    724 F.3d 561 (4th Cir. 2013) .........................................................16, 41, 50

*EEOC v. Service News Co.*,
    898 F.2d 958 (4th Cir. 1990) .........................................................16, 44

*Emilio v. Sprint Spectrum L.P.*,
　　508 Fed. Appx. 3 (2d Cir. 2013).................................................................18

*Fisher v. Wheat First Secs., Inc.*,
　　62 Fed. Appx. 472 (4th Cir. 2003) .............................................................18

*FTC v. 1st Guar. Mortg. Corp.*,
　　2011 U.S. Dist. LEXIS 38152 (S.D. Fla. Mar. 30, 2011) ......................21, 24

*FTC v. Gill*,
　　265 F.3d 944 (9th Cir. 2001) ........................................................14, 21, 23, 26

*FTC v. Lalonde*,
　　545 Fed. Appx. 825 (11th Cir. 2013) ...........................................................23

*FTC v. Latrese & Kevin Enters.*,
　　2010 U.S. Dist. LEXIS 142087 (M.D. Fla. Jan. 27, 2010) .........................24

*FTC v. RCA Credit Servs., LLC*,
　　2010 U.S. Dist. LEXIS 143755 (M.D. Fla. Oct. 14, 2010)..........................24

*Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*,
　　695 F.3d 330 (5th Cir. 2012) ..........................................................................54

*Genus Credit Mgmt. Corp. v. Jones*,
　　2006 U.S. Dist. LEXIS 16933 (D. Md. Apr. 6, 2006)................................ 5-6

*Gilmer v. Interstate/Johnson Lane Corp.*,
　　500 U.S. 20 (1991).........................................................................17, 20, 59

*Greene v. CCDN, LLC*,
　　853 F. Supp. 2d 739 (N.D. Ill. 2011)................................................ 21-22, 24

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*,
　　789 F. Supp. 1288 (D. N.J. 1992)...........................................................16, 52

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
　　995 F.2d 414 (3d Cir. 1993) ................................................................*passim*

vii

*Gunnells v. Healthplan Servs.*,
    348 F.3d 417 (4th Cir. 2003) ..........................................................34

*Hardt v. Reliance Std. Life Ins. Co.*,
    560 U.S. 242 (2010).......................................................................15

*Helms v. Consumerinfo.com, Inc.*,
    436 F. Supp. 2d 1220 (N.D. Ala. 2005) .......................................24

*Hensley v. Eckerhard*,
    461 U.S. 424 (1983)..................................................................40, 53

*Hillis v. Equifax Consumer Servs.*,
    237 F.R.D. 491 (N.D. Ga. 2006) ..................................................36

*Holz-Her U.S., Inc. v. Monarch Mach., Inc.*,
    47 F. Supp. 2d 646 (W.D.N.C. 1999)...........................................36

*Hudson v. Pittsylvania County*,
    2013 U.S. Dist. LEXIS 121930 (W.D. Va. Aug. 1, 2013) ............41

*Jackson v. Estelle's Place, LLC*,
    391 Fed. App'x. 239 (4th Cir. 2010) ............................................42

*Johnson v. Georgia Highway Express*,
    488 F.2d 714 (5th Cir. 1974) .................................................*passim*

*Jones v. Genus Credit Mgmt. Corp.*,
    353 F. Supp. 2d 598 (D. Md. 2005).......................................5, 6, 60

*Kabore v. Anchor Staffing, Inc.*,
    2012 U.S. Dist. LEXIS 149761 (D. Md. Oct. 17, 2012) ...............57

*Kashner Davidson Sec. Corp. v. Mscisz*,
    531 F.3d 68 (1st Cir. 2008)......................................................19, 27

*Kindred v. McLeod*,
    2010 U.S. Dist. LEXIS 123116 (W.D. Va. Nov. 19, 2010).........24

*Kyocera Corp. v. Prudential-Bache T Servs.*,
    341 F.3d 987 (9th Cir. 2003) ........................................................18

*Long John Silver's Rests., Inc. v. Cole*,
    514 F.3d 345 (4th Cir. 2008) ...................................................20, 59

*McDaniels v. Westlake Servs., LLC*,
    2014 U.S. Dist. LEXIS 16081 (D. Md. Feb. 7, 2014)...................................42

*McGlothin v. Murray*,
    1998 U.S. App. LEXIS 14893 (4th Cir. Jul. 1, 1998) ...................................44

*MCI Constructors, LLC v. City of Greensboro*,
    610 F.3d 849 (4th Cir. 2010) ........................................................19

*Millea v. Metro-N. R.R. Co.*,
    658 F.3d 154 (2d Cir. 2011) ........................................................50

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
    473 U.S. 614 (1985) ...................................................20, 59

*Newton v. Am. Debt Servs.*,
    854 F. Supp. 2d 712 (N.D. Cal. 2012).........................................................27

*O'Well Novelty Co. Ltd. v. Offenbacher, Inc.*,
    1999 U.S. Dist. LEXIS 10529 (D. Md. Jun. 4, 1999) ...................................49

*Oxford Health Plans, LLC v. Sutter*,
    133 S. Ct. 2064 (2013)...................................................19

*Pa. v. Del. Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986)...................................................40

*Patten v. Signator Ins. Agency, Inc.*,
    441 F.3d 230 (4th Cir. 2006) ...................................................19, 35

*Perdue v. Kenny A.*,
    559 U.S. 542 (2010).......................................................*passim*

ix

*Phoenix Bond & Indem. Co. v. Bridge*,
   2012 U.S. Dist. LEXIS 173721 (N.D. Ill. Dec. 7, 2012) ...........................54

*Pinkham v. Camex, Inc.*,
   84 F.3d 292 (8th Cir. 1996) .......................................................................54

*PMA Capital Ins. Co. v. Platinum Underwriters Berm., Ltd.*,
   400 Fed. Appx. 654 (3d Cir. 2010) ............................................................18

*Polacsek v. Debticated Consumer Counseling*,
   413 F. Supp. 2d 539 (D. Md. 2005)....................................................4, 26, 48

*Porzig v. Dresdner, Kleinwort, Benson, N.A., LLC*,
   497 F.3d 133 (2d Cir. 2007) ................................................................15, 38

*Project Vote/Voting for Am., Inc. v. Dickerson*,
   444 Fed. Appx. 660 (4th Cir. 2011) ...........................................................58

*Rannis v. Fair Credit Lawyers Inc.*,
   489 F. Supp. 2d 1110 (C.D. Cal. 2007)........................................................24

*Rannis v. Recchia*,
   380 Fed. Appx. 646 (9th Cir. 2010) ............................................................21

*Raymond James Fin. Servs., Inc. v. Bishop*,
   596 F.3d 183 (4th Cir. 2010) .....................................................................18

*Rivera v. Thomas*,
   316 F. Supp. 2d 256 (D. Md. 2004).............................................................19

*Rogers v. City of Virginia Beach*,
   1999 U.S. App. LEXIS 15955 (4th Cir. Jul. 15, 1999) .................................40

*Rosenbaum v. Imperial Capital, LLC*,
   169 F. Supp. 2d 400 (D. Md. 2001)............................................................22

*Rum Creek Coal Sales v. Caperton*,
   31 F.3d 169 (4th Cir. 1994) ......................................................................44

*Rusmisell v. Smith*,
    2000 U.S. App. LEXIS 26079 (4th Cir. Oct. 20, 2000) ................................43

*Sciambra v. Graham News*,
    892 F.2d 411 (5th Cir. 1990) .......................................................................53, 54

*Schwartz v. Merrill Lynch & Co*.,
    665 F.3d 444 (2d Cir. 2011) .......................................................................18

*Spell v. McDaniel*,
    852 F.2d 762 (4th Cir. 1988) .......................................................................57

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp*.,
    559 U.S. 662 (2010)...................................................................................19, 35

*Trimper v. City of Norfolk*,
    58 F.3d 68 (4th Cir. 1995) .......................................................................44

*United States v. Cornerstone Wealth Corp*.,
    549 F. Supp. 2d 811 (N.D. Tex. 2008) .......................................................24

*United Steelworkers of America v. Enterprise Wheel & Car Corp*.,
    363 U.S. 593 (1960)...................................................................................35

*Wachovia Sec., LLC v. Brand*,
    671 F.3d 472 (4th Cir. 2012) .......................................................................19

*Zimmerman v. Puccio*,
    613 F.3d 60 (1st Cir. 2010)...............................................................*passim*

*Zimmermann v. Cambridge Credit Counseling Corp*.,
    409 F.3d 473 (1st Cir. 2005) .......................................................................30

*Zimmermann v. Cambridge Credit Counseling Corp*.,
    529 F. Supp. 2d 254 (D. Mass. 2008)...................................................23, 26

## STATUTES

9 U.S.C. § 1, *et. seq.*.................................................................................1

9 U.S.C. § 10..........................................................................................59

9 U.S.C. § 10(a)(4)..................................................................................18

15 U.S.C. § 1679, *et. seq.*...............................................................1, 22

15 U.S.C. § 1679a(3)........................................................................*passim*

15 U.S.C. § 1679a(3)(a).............................................................................8

15 U.S.C. § 1679b(b)...........................................................7, 21, 22, 26

15 U.S.C. § 1679c............................................................................*passim*

15 U.S.C. § 1679d............................................................................*passim*

15 U.S.C. § 1679e............................................................................*passim*

15 U.S.C. § 1679f..............................................................................20, 60

15 U.S.C. § 1679g.............................................................................20, 59

15 U.S.C. § 1679g(a)........................................................................12, 39

15 U.S.C. § 1679g(a)(1)..................................................................*passim*

15 U.S.C. § 1679g(a)(1)(B)............................................................*passim*

15 U.S.C. § 1679g(a)(3)..................................................................*passim*

26 U.S.C. § 501(c)(3)...............................................................................30

28 U.S.C. § 1291.......................................................................................1

28 U.S.C. § 1988.....................................................................................57

29 U.S.C. § 216(b) .................................................................................40

Md. Code Ann. § 12-916(b).................................................................37

Md. Code Ann. § 12-918(f)(1).............................................................37

**RULES**

Fed. R. App. P. 3(a)(1)(A) ....................................................................1

Fed. R. App. P. 4(a)(4)(1) .....................................................................1

Fed. R. Civ. P. 23 ................................................................................34

**OTHER AUTHORITY**

*Profiteering In A Non-Profit Industry: Abusive Practices In Credit Counseling*, 108th Congress (Mar. 24, 2004)...........................................4

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

The district court had jurisdiction over Plaintiffs-Appellants' (hereafter "Plaintiffs") motion to vacate in part, and confirm in part, the Arbitrator's Final Award and Plaintiffs' federal claims pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. § 1, *et. seq.* and the Credit Repair Organizations Act ("CROA") 15 U.S.C. § 1679, *et. seq.*

This Court has jurisdiction over Plaintiffs' appeal pursuant to 28 U.S.C. § 1291, FED. R. APP. P. 3(a)(1)(A) and FED. R. APP. P. 4(a)(4)(1), following entry of a Final Judgment (A. 441-442; Doc. No. 36)[1] on October 20, 2014 that disposed of all parties' claims in the district court.  Plaintiffs filed a timely Notice of Appeal (A. 443-444; Doc. No. 37) from the Amended Final Judgment, and all prior judgments, orders and rulings, on October 27, 2014.

---

[1]     Citations to "A." refer to the accompanying *Appendix*.  Citations the "Doc. No." refer to documents filed in the district court.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.      Did the Arbitrator exceed his powers, engage in manifest disregard of the law and rule in an irrational manner by adding requirements to the Credit Repair Organizations Act (CROA) actual damages remedy set forth in 15 U.S.C. § 1679g(a)(1)(B) that are absent and contradictory to its clear and mandatory award of "any amounts paid" to the CROA violator, and by denying CROA actual damages to the certified Class on the basis of the added conditions?

2.      Did the Arbitrator exceed his powers, engage in manifest disregard of the law and rule in an irrational manner by denying CROA actual damages to the certified Class when:  (i) Arbitrator held in the Final Award that each Defendant-Appellee violated multiple provisions of CROA; (ii) the unanimous case law construing 15 U.S.C. § 1679g(a)(1) to award actual damages to every victim or victim class against every CROA violator; and (iii) the Supreme Court in *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 671 (2012) guaranteed CROA's statutory remedies to consumers in arbitration?

3.      Did the Arbitrator exceed his powers, engage in manifest disregard of the law and rule in an irrational manner by refusing to award reasonable attorneys' fees or costs under CROA's fee-shifting mandate to Plaintiffs and Class Counsel who successfully obtained a final adjudication that Defendants-Appellees violated

multiple provisions of CROA, which violations were sufficiently severe to warrant an award of punitive damages?

4.    Did the Arbitrator exceed his powers, engage in manifest disregard of the law and rule in an irrational manner by refusing to apply the tests for awarding attorneys' fees set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974) and *Perdue v. Kenny A*, 559 U.S. 542 (2010)?

5.    Did the district court engage in reversible error by denying Plaintiffs-Appellants' motion to vacate in part the arbitrator's Final Award after performing only a self-described "cursory review" of the motion and supporting submissions, rather than performing a review of the motion to determine whether the Arbitrator exceeded his powers and acted in manifest disregard of the law by denying the certified Class its federal statutory rights provided in CROA?

## STATEMENT OF THE CASE
## AND STATEMENT OF FACTS

After a final arbitration hearing hearing, the Arbitrator held that Defendants-Appellees Bernaldo Dancel, Amerix Corporation, 3CI, Inc. and CareOne Services, Inc. (collectively the "Liable Respondents") intentionally violated multiple substantive provisions of CROA. He held they did so as "Credit Repair Organizations" defined by CROA. Like other discredited enterprises that sold, marketed and administered Debt Management Plans ("DMPs"), Respondents prayed on financially-vulnerable consumers. *See Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010); *Polacsek v. Debticated Consumer Counseling*, 413 F. Supp. 2d 539 (D. Md. 2005).[2] For over eleven years spanning 1998 through 2009, Liable Respondents were paid over $550 million for selling and administering DMPs to consumers. Despite the Arbitrator's factual and evidentiary findings confirming Liable Respondents' CROA violations, he did not award any CROA actual damages to the victim Class. He also denied the payment of all attorneys' fees and costs to Class Counsel, ignoring CROA's fee-shifting statute. The District Court refused to engage in any meaningful review of the Arbitrator's Final Award.

---

[2]     The United States Senate investigated and addressed the abuses of Liable Respondents along-side the defendants in the *Zimmermann* and *Polacsek* cases, as recounted in excerpted form in an IRS audit report admitted into evidence during the arbitration. A. 480-486; *See also* District Court Docket No. 27-3 (annexing full Senate Report entitled, *Profiteering In A Non-Profit Industry: Abusive Practices In Credit Counseling*).

Plaintiffs Laverne Jones, Stacey Jones f/k/a Stacey Ness and Kerry Ness (collectively with the certified class, "Plaintiffs"), claimants in the American Arbitration Association class arbitration styled *Jones v. Genus Credit Management Corp.*, AAA Case No. 11 181 00295 05, respectfully submit this Brief in support of their appeal to vacate in part the April 30, 2014 *Final Award of Arbitrator*, entered by arbitrator Donald H. Green, and to reverse the Final Judgment, Memorandum and Order entered by the district court (Hon. J. Frederick Motz) to the extent it denied Plaintiffs' motion to partially vacate the Final Award.

Plaintiffs do not appeal the district court's judgments and orders granting their motion to partially confirm the Final Award, and in particular the Arbitrator's holdings that: (i) Liable Respondents were each "Credit Repair Organizations" defined by CROA; (ii) Liable Respondents each violated 15 U.S.C. §§ 1679c, 1679d, 1679e; (iii) Liable Respondents each received advance payments prior to the completion of their credit repair services; and (iv) that Bernaldo Dancel's ("Dancel") and Amerix Corporation's ("Amerix") violations of CROA warranted an award punitive damages.

The facts and procedural history of this case prior to 2012 are incorporated from this Court's decision confirming certification of the Class. *Amerix Corp. v. Jones*, 457 Fed. Appx. 287, 290-291 (4th Cir. 2011); *see also Amerix Corp. v. Jones*, 2012 U.S. Dist. LEXIS 5204 (D. Md. Jan. 17, 2012); *Genus Credit Mgmt.*

*Corp. v. Jones*, 2006 U.S. Dist. LEXIS 16933 (D. Md. Apr. 6, 2006); *Jones v. Genus Credit Mgmt. Corp*., 353 F. Supp. 2d 598 (D. Md. 2005). *See also* A. 29-30 (¶¶ 2-7).

In 2010 and 2011, following class certification, Plaintiffs reached two classwide settlements with former respondents North Seattle Community College Foundation and its American Financial Solutions division (collectively "AFS"), and InCharge Institute of America Inc. and its Genus Credit Management subsidiary (collectively "Genus"). The settlements (collectively the "Interim Settlements") required Genus and AFS to each pay $4,000,000.00. The Arbitrator approved both interim settlements and awards of attorneys' fees and costs to Class Counsel as "fair and reasonable," describing Class Counsel's work as "exemplary" and finding the claims "zealously prosecuted" for the Class. *See* A. 124-126; A. 128-136; A. 138-145.

Throughout the Fall of 2011, Class Counsel prepared the Classes' case for the final hearing against Liable Respondents and respondent Ascend One, participating in multiple pre-trial motions and hearings. The final hearing was conducted during sixteen (16) trial days from November 2011 through January 2012. Closing arguments were held in June 2012. After the final hearing, the Arbitrator directed separate briefing concerning: i) Respondents' motion to decertify the Class; ii) liability; iii) punitive damages; and iv) attorneys' fees. The

parties filed post-final hearing briefs totaling hundreds of pages. Additional hearings were held in in 2012 and 2013. On November 20, 2012, the Arbitrator entered an interim award sustaining class certification for the Classes' CROA claims (the "Post-Final Hearing Class Award"). On March 29, 2013, the Arbitrator entered his *Liability Ruling in Anticipation of the Final Award* (the "Liability Award"), holding that Liable Respondents had violated CROA. On September 24, 2013, the Arbitrator entered his *Rulings on Punitive Damages* (the "Punitive Damages Award"). On April 29, 2014, the Arbitrator entered his *Rulings on Attorneys' Fee Application* (the "Fee Award"). On April 30, 2014, the Arbitrator entered the *Final Award of Arbitrator* (the "Final Award"), collecting the Liability Award (as clarified in an October 15, 2013 email order), the Punitive Damages Award and the Fee Award.

The "Liability Award"

The Liability Award (A. 28-78) is the first of three awards collected in the Final Award. In the Liability Award, the Arbitrator held that Dancel, Amerix, 3CI, Inc. ("3CI") and CareOne Services, Inc. f/k/a FreedomPoint Corporation ("CareOne") intentionally violated CROA Sections 1679c, 1679d, 1679e. The Arbitrator further held that the Liable Respondents received advance payments for credit repair services, a violation of Section 1679b(b). Although holding that the Liable Respondents violated multiple sections of CROA, *and were paid for their*

7

*credit repair services*, the Arbitrator awarded no actual damages to the Class under CROA Section 1679g(a)(1)(B).

The Arbitrator restated the definition of the victim Class at 487,066 American consumers and eleven-year Class Period.  A. 33, 55, 56 (¶¶ 17, 122, 124).  Critical for liability under CROA, he held that Dancel, Amerix, 3CI and CareOne were each "Credit Repair Organizations" ("CROs"), defined by CROA Section 1679a(3).  A. 49, 50 (¶¶ 87, 91, 93, 95).  In order to make that finding, the Arbitrator held that the evidence proved that Liable Respondents performed services to the Class, "in return for the payment of money or other valuable consideration."  15 U.S.C. § 1679a(3)(a).

The Arbitrator denied a series of other defenses to the Classes' CROA claims.  A. 40, 50, 52-53 (¶¶ 45, 96, 109 (rejecting agency exemption defense); A. 48 (¶ 85; rejecting defense limiting CROA to "repairing historical credit ratings."); A. 53-54 (¶¶ 113-116; rejecting privity defenses).  The evidence confirmed that Liable Respondents provided credit repair services and violated CROA during the entire Class Period based on their marketing, sale and administration of the DMPs.  A. 46 (¶¶ 72, 75).

The Arbitrator held that Liable Respondents did not even attempt to comply with CROA's reporting and disclosure provisions codified in Sections 1679c, 1679d and 1679e.  A. 46 (¶ 73; "Respondents never made (nor ever claimed to

have made) the disclosures mandated by CROA").  As held by the Arbitrator: "Those violations denied hundreds of thousands of consumers the information and options that should have been given to them under the disclosure requirements of CROA."  A. 70-71 (¶ 199); *see also* A. 46 (¶ 73; "Hundreds of thousands of their customers were denied the information that CROA required Respondents to provide.").

The Arbitrator further held that Liable Respondents received *two types of payments* for their credit repair services.  The first type were direct payments by the Class to Genus and AFS, most of which were paid over to the Liable Respondents.  *See* A. 41, 42, 54 (¶¶ 52, 55, 115).  These payments were termed "voluntary contributions" by Liable Respondents' marketing materials and sales scripts.  *See* A. 69 (¶ 192).  The second type of payments were termed "Fair Share" and were made by Class members' creditors resulting from the Class members' DMP participation.  A. 56 (¶ 124).  Like the so-called "voluntary contributions," most of the Fair Share payments were paid to Liable Respondents.  A. 56, 69-70 (¶¶ 125, 195).

Although holding that Liable Respondents violated CROA and were paid for their credit repair services, the Arbitrator completely denied an award of actual damages under CROA Section 1679g(a)(1)(B).  A. 68-70 (¶¶ 191-198).

The "Punitive Damages Award"

In the Punitive Damages Award (A. 79-85), the Arbitrator held that Liable Respondents' CROA violations were intentional.    A. 82-83 (¶ 12).    Those violations injured every member of the Class.  A. 82 (¶ 11).  Nevertheless, the Arbitrator crafted his award to, "not put Liable Respondents out of business nor into bankruptcy." A. 83 (¶ 14); *see also* A. 80-81 (¶ 4).  Notwithstanding credit repair payments made to Liable Respondents exceeding $550 million during the Class Periods, the Arbitrator awarded punitive damages of only $1,948,264.00.  A. 79 (¶ 1).  That award was too small to be distributed to the class of 487,066 victims.  A. 84-85 (¶¶ 18, 20, 21).  To adequately deter future violations and punish Liable Respondents, the Arbitrator stated his intention to supplement the punitive damage award by "several million dollars in attorneys' fees, as well as the costs."  *Id.*  But because he ultimately held (contrary to CROA's express terms) that Liable Respondents need not pay *any* attorneys' fees or costs to Plaintiffs or their counsel, the Arbitrator contradicted his own ruling.

The "Fee Award"

At the conclusion of the final hearing, Plaintiffs and their counsel originally sought attorneys' fees under a common fund theory, the method employed by the Arbitrator in approving the Interim Settlements.  But after the Arbitrator refused to award actual damages to the Class, thereby denying the creation of a common

fund, Plaintiffs and their counsel sought attorneys' fees under CROA's fee-shifting provision. A. 428-434. In their motion for fees and costs, Class Counsel voluntary reduced their fee request by 40% of their total lodestar. A. 430-431(¶ 8); A. 87, 103 (¶¶ 1, 33). The Arbitrator overlooked that voluntary reduction, mistakenly stating that Class Counsel sought to be paid their total lodestar. A. 92-93 (¶ 11).

Plaintiffs and their counsel ultimately prevailed in proving Liable Respondents' classwide violations of CROA. During the course of this long case, they also prevailed on myriad dispositive motions, each of which would have ended this case had Plaintiffs lost, including: i) defeating Liable Respondents' challenges to clause construction; ii) prevailing on class certification; iii) defeating three motions to decertify the Class; iv) defeating motions to dismiss and for summary judgment; v) prevailing in *three* appeals to the district court and one further appeal to the Fourth Circuit Court of Appeals filed by Liable Respondents challenging the Arbitrator's clause construction and class certification awards. In addition, Class Counsel completed hundreds of hours of document and deposition discovery necessary to prevail under CROA. The Fee Award acknowledged that, "a large amount of time was spent by Class Counsel defending 'core' issues, such as clause construction and class certification [that] were common to all claims and would have been involved even had Plaintiffs sought relief only under the CROA disclosure theory." A. 95 (¶ 15).

11

Yet despite Class Counsel's successful efforts, the Arbitrator ruled that Liable Respondents did not have to pay *any* attorneys' fees or costs.  A. 104 (¶ 36).  In reaching that result, he ignored the fee-shifting provisions in CROA Sections 1679g(a) and 1679g(a)(3). The Arbitration expressly declined to follow the Supreme Court's lodestar rules set forth in *Perdue v. Kenny A*, 559 U.S. 542 (2010) A. 97-98 (¶ 20).  Over Plaintiffs' objection, the Arbitrator also failed to apply or discuss the required analysis from *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974), adopted in this Circuit.  Instead of applying CROA's fee-shifting statute or the *Perdue* or *Johnson* standards, the Arbitrator offered only his "general" views on the reasonableness of the fee motion.  A. 100 (¶ 24).

Applying his own test, the Arbitrator employed a self-described "machete" (to reduce Class Counsel's fee request by two-thirds, and thereafter "setoff" the reduced award by the amount of fees and costs he had previously approved as "fair and reasonable" in the Interim Settlements.  A. 103, 104-105 (¶¶ 34, 37).   His rationale for the setoff was grounded in a district court decision from New Jersey.  A. 103 (¶ 34).   That decision, however, was vacated by the Third Circuit. *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp*., 995 F.2d 414, 421-23 (3d Cir. 1993).  Class Counsel advised the Arbitrator that the district court's

holding was vacated, but he chose to ignore the Third Circuit's decision and analysis. *Id*. (¶¶ 34, 36).

Liable Respondents were adjudged after the final hearing to have intentionally violated multiple substantive provisions of CROA, for eleven years, injuring 487,066 financially vulnerable consumers.  Yet, they were not required to pay any actual damages, attorneys' fees or costs, in violation of the CROA statutory mandates and relying on his personal opinion that the CROA's regulatory scheme is overly harsh and his desire to not put Liability Respondents into bankruptcy or out of business.

## SUMMARY OF THE ARGUMENT

1.    The actual damages remedy for any violation of CROA is clear and unambiguous.  Any person who violates any provision of CROA with respect to any other person "shall" pay actual damages in an amount not less than "any amounts paid" by the aggrieved person to the CRO. 15 U.S.C. § 1679g(a)(1)(B). The courts have had no trouble applying the terms of Section 1679g(a)(1). Complying with this statutory remedy, *every* court that has adjudged a violation of CROA has awarded actual damages.  *See e.g.*, *Zimmerman v. Puccio*, 613 F.3d 60, 69 (1st Cir. 2010); *FTC v. Gill*, 265 F.3d 944, 958 (9th Cir. 2001); *Infra*. Sec. II.C. The Arbitrator's Final Award stands alone, in any forum, in finding a violation of CROA, but failing to award actual damages to the victims.  Congress included a clear and unambiguous formula to determine the amount of the actual damages as "any amounts paid" to the credit repair organization.   The Supreme Court *guaranteed* enforcement of that remedy to consumer victims of CROA in an arbitration forum.  *CompuCredit*, 132 S. Ct. at 671.

2.    The Arbitrator crafted his errant interpretation 15 U.S.C. § 1679g(a)(1)(B) by adding a "required payments" element he claims to have borrowed from 15 U.S.C. § 1679a(3).  A. 69 (¶ 194).  However, those words do not appear in *either* statute.  His denial of CROA actual damages based on language absent from the CROA remedy statute exceeded his powers by "invent[ing] a

14

statute rather than interpret[ing] one." *Hardt v. Reliance Std. Life Ins. Co.*, 560 U.S. 242, 252 (2010) (citation omitted). But even if the Arbitrator were permitted to change the meaning of a federal actual damages remedy by importing words from 15 U.S.C. § 1679a(3), his analysis must still manifestly fail. Section 1679a(3) defines a CRO. And even with its purported "required payments" element, *the Arbitrator held that each Liability Respondent was a CRO*. A. 49-50 (¶¶ 87, 91, 93, 95). The Arbitrator separately held that Liability Respondents had each received "payments" for their credit repair services in the nature of Fair Share exceeding $300 million. A. 56, 69-70 (¶¶ 124, 125, 195). Thus, if the Arbitrator did not exceed his powers by adding a "required payments" requirement absent from 15 U.S.C. § 1679g(a)(1)(B), his own rulings demonstrate that the "required payments" element he invented for CROA were proven by the Class during the final arbitration hearing and the admitted evidence.

3.    CROA is a federal fee-shifting statute providing that liable parties "shall be" additionally liable for the payment of reasonable attorneys' fees and costs to counsel who successfully prosecute violations of the statute. 15 U.S.C. § 1679g(a)(3). The Arbitrator was not permitted to ignore CROA just because this case was referred to arbitration. *See Porzig v. Dresdner, Kleinwort, Benson, N.A., LLC*, 497 F.3d 133, 141 (2d Cir. 2007) (an arbitrator must apply "the same fee calculation methods as the courts.").

4.     This Circuit requires application and discussion of the "*Johnson* factors*" to evaluate and calculate an award of attorneys' fees.  *See EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990).  A cursory or conclusory review of these factors is not sufficient.  *See Best Med. Int'l, Inc. v. Eckert and Ziegler Nuclitec GmbH*, 505 Fed. Appx. 281, 284 (4th Cir. 2013).  Yet, even though urged by Plaintiffs, the Arbitrator did not apply or even mention the *Johnson* factors.

5.     In addition to ignoring CROA's fee-shifting mandate and the *Johnson* factors, the Arbitrator expressly declined to apply the Supreme Court's most recent lodestar fee standards established by *Perdue v. Kenny A.*, 559 U.S. 542 (2010).  A. 97-98 (¶ 20).  His reasoning that *Perdue* applies only to enhancements to lodestar, and not reductions, is contracted by the Circuit Courts' application of *Perdue*.  *See Eastern Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561, 570 (4th Cir. 2013); *Bywaters v. United States*, 670 F.3d 1221, 1230 (D.C. Cir. 2012).

6.     After reducing Class Counsel's attorneys' fee request by two-thirds, the Arbitrator then reduced the award to $0 by "setting off" fees paid to Class Counsel *other respondents* in the related Interim Settlements.  To justify that setoff, the Arbitrator relied on *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 789 F. Supp. 1288 (D. N.J. 1992), a decision vacated by the Third Circuit.  *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995

16

F.2d 414, 421-23 (3d Cir. 1993). The vacated setoff analysis has been universally rejected by courts nationwide.

7.    The Arbitrator's single paragraph denying the reimbursement of costs is not only contrary to CROA and irrational, but applied a "clawback" that the Arbitrator stated in the Fee Award he would *not* apply.  A. 104-105 (¶¶ 36, 37).

8.    In denying Plaintiffs' motion to partially vacate the Final Award, the district court applied what it described as only a "cursory review" of Plaintiffs' motion and supporting submissions.  A. 436.  That Memorandum decision does not contain any factual or legal findings, save for rubber-stamping the Arbitrator's conclusions, and fails to satisfy the guarantee of federal statutory rights in arbitration provided by the Supreme Court in *Gilmer* and *CompuCredit*.

# ARGUMENT

## I.    STANDARDS OF REVIEW

### A.    STANDARDS OF APPELLATE REVIEW OF DISTRICT COURT ORDERS TO VACATE ARBITRATION AWARDS

Review on appeal of a district court's conclusions of law evaluating a motion to vacate an arbitral award is *de novo*. *Dewan v. Walia*, 544 Fed. Appx. 240, 244 (4th Cir. 2013); *Raymond James Fin. Servs., Inc. v. Bishop*, 596 F.3d 183, 190 (4th Cir. 2010). Although the district court did not make any factual findings, such findings would be reviewed on appeal for clear error. *Id*.

### B.    STANDARD OF REVIEW OF ARBITRAL AWARDS GENERALLY, AND AWARDS EVALUATING FEDERAL STATUTORY REMEDIES SPECIFICALLY

The FAA mandates vacatur where an arbitrator has "exceeded his powers." 9 U.S.C. § 10(a)(4); *Fisher v. Wheat First Secs., Inc*., 62 Fed. Appx. 472, 475 (4th Cir. 2003); *Emilio v. Sprint Spectrum L.P*., 508 Fed. Appx. 3 (2d Cir. 2013). An award that manifestly disregards the law or is irrational also violates 9 U.S.C. § 10(a)(4). *See Kyocera Corp. v. Prudential-Bache T Servs*., 341 F.3d 987, 997 (9th Cir. 2003) (*en banc*) (arbitrators "exceed their powers" when the award is "completely irrational," or exhibits a "manifest disregard of law."); *see also Schwartz v. Merrill Lynch & Co*., 665 F.3d 444, 452 (2d Cir. 2011); *PMA Capital Ins. Co. v. Platinum Underwriters Berm., Ltd*., 400 Fed. Appx. 654, 656 (3d Cir. 2010). Any part of an arbitral award that exceeds an arbitrator's powers shall be

vacated, without disturbing the remainder. *See Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009).

Manifest disregard of the law serves as a further basis to vacate arbitration awards. *See Dewan v. Walia*, 544 Fed. Appx. 240 (4th Cir. 2013) (vacating arbitration award); *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 481-83 (4th Cir. 2012); *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 234 (4th Cir. 2006). Manifest disregard exists when an arbitrator "understand[s] and correctly state[s] the law, but proceed[s] to disregard the same.'" *Dewan*, 544 Fed. Appx. at 246 (quoting *Patten*, 441 F.3d at 235) (modifications in original). Manifest disregard also lies where an arbitrator "based his award on his own personal notions of right and wrong." *Id.*; *see also Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010). An award that is "irrational" presents a further ground to vacate an arbitrator's award. *See Rivera v. Thomas*, 316 F. Supp. 2d 256, 259 (D. Md. 2004).

While "[c]ourts must accord substantial deference to the decisions of arbitrators[,] [n]evertheless, there are limits to that deference." *Kashner Davidson Sec. Corp. v. Mscisz*, 531 F.3d 68, 70 (1st Cir. 2008). As compared to an arbitrator's evaluation of a contract's disputed meaning,[3] a stricter standard of

---

[3]     *See e.g.*, *Oxford Health Plans, LLC v. Sutter*, 133 S. Ct. 2064, 2070-71 (2013); *MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849 (4th Cir. 2010).

review applies when an arbitrator is applying a statutory remedy. "[B]y agreeing to arbitrate a *statutory claim*, a party does not forgo the substantive rights afforded by the statute; …." *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)) (emphasis added); *accord Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 350 (4th Cir. 2008).

### C.    THE SUPREME COURT HAS GUARANTEED CROA'S STATUTORY REMEDIES IN ARBITRATION

The Supreme Court has permitted the arbitration of CROA claims, but only with the "guarantee" that the statutory remedies in 15 U.S.C. § 1679g are "preserved" in arbitration with the same force as they would lie in the federal courts. *CompuCredit*, 132 S. Ct. at 671.  *CompuCredit* and CROA's express anti-waiver provision make clear that CROA's rights and remedies cannot be waived, in court or arbitration. *Id*.; 15 U.S.C. § 1679f.  Here, the Arbitrator's knowing failure to award CROA compensatory damages to the certified Class not only conflicts with *every* court decision interpreting CROA's damage remedy, but also conflicts with the Supreme Court's decision in *CompuCredit*.  The same holds for the Arbitrator's denial of attorneys' fees and costs mandated by CROA.

## II.  THE FINAL AWARD'S DENIAL OF CROA ACTUAL DAMAGES SHOULD BE VACATED

Although holding that the evidence demonstrated Liable Respondents' violations of multiple provisions of CROA, and finding that they were paid for their credit repair services, the Arbitrator refused to apply the mandatory CROA actual damages remedy set forth in 15 U.S.C. § 1679g(a)(1)(B).  CROA's actual damage remedy is clear, unambiguous and mandatory.  The Arbitrator was not free to disregard its terms and substitute his own brand of justice.  His Final Award rulings denying actual damages to Plaintiffs and the Class must be vacated, and the district court's denial of vacatur should be reversed.

### A.  THE ARBITRATOR HELD THAT LIABLE RESPONDENTS VIOLATED CROA SECTIONS 1679C, 1679D, 1679E AND RECEIVED ADVANCE PAYMENTS

The Arbitrator held that Amerix, 3CI, Careone and Dancel provided credit repair services to 487,066 Class members without ever providing the disclosures required by CROA.  Each therefore violated Sections 1679c, 1679d and 1679e.  A. 46, 48, 49, 57, 70-71 (¶¶ 73, 85, 86, 128, 199). The violations were intentional and constant during the Class Period.  A. 82 (¶¶ 10, 11).

Liable Respondents were also paid for credit repair services prior to the completion of these services.  That is a violation of § 1679b(b).  *See Rannis v. Recchia*, 380 Fed. Appx. 646, 649-50 (9th Cir. 2010); *Gill*, 265 F.3d at 956; *1st Guar. Mortg. Corp.*, 2011 U.S. Dist. LEXIS 38152 at *42; *Greene*, 2011 U.S. Dist.

LEXIS 31614 at *35-36. The Arbitrator acknowledged that claim, A. 47 (¶ 80), and held that Liable Respondents received payments prior to the completion of their credit repair services deriving from the Class, A. 53-54, 68 (¶¶ 113-115, 191), and from "fair share" payments. A. 56, 69-70 (¶¶ 125, 195). Thus, the Class proved Liable Respondents' violations of CROA Section 1679b(b).

### B.    CROA *MANDATES* ACTUAL DAMAGES FOR ALL CROA VIOLATIONS

CROA mandates that *for any violation of CROA*, the actual damage remedy "shall be" no less than all "amount[s] paid" to violator(s) for their credit repair services. 15 U.S.C. § 1679g(a)(1). CROA's "Actual Damages" provision states:

> (a)    Liability established.  Any person who fails to comply with any provision of this title [15 U.S.C. §§ 1679, *et. seq.*] with respect to any other person shall be liable to such person in an amount equal to the sum of the amounts determined under each of the following paragraphs:
>
> > (1)    Actual damages. The greater of—
> >
> > (A)    the amount of any actual damage sustained by such person as a result of such failure; or
> > (B)    ***any amount paid by the person to the credit repair organization.***

(Emphasis added). Plaintiff and the Class calculated their actual damages under Section 1679g(a)(1)(B). A. 47 (at 20, n.16). CROA's actual damages remedy set forth in Section 1679g(a)(1)(B) is "well defined, explicit, and clearly applicable." *Rosenbaum v. Imperial Capital, LLC*, 169 F. Supp. 2d 400, 409 (D. Md. 2001)

(quoting *Carte Blanche (Singapore) Pte. v. Carte Blanche Int'l*, 888 F.2d 260, 265 (2d Cir. 1989)).

The Arbitrator was aware of the CROA actual damage remedy.  A. 47, 68 (¶¶ 81, 191). His decision not to award actual damages to the Class after finding that Liable Respondents each violated multiple provisions of CROA and that each were CROs who were paid for their credit repair services was manifest disregard of CROA and exceeded his powers.

## C.    EVERY COURT HAS AWARDED ACTUAL DAMAGES FOR ADJUDICATED CROA VIOLATIONS

The CROA actual damages remedy is neither ambiguous nor discretionary, as is evident from the statutory text and the uniform application of 15 U.S.C. § 1679g(a)(1).  *Every* court to adjudge a violation of CROA has awarded the plaintiffs, or plaintiff class, actual damages required by the statute.  *FTC v. Lalonde*, 545 Fed. Appx. 825, 831, 836-38, 841 (11th Cir. 2013) (affirming CROA judgment and monetary relief including $254,881.00 of "gross revenue [] attributable to credit repair services."); *Zimmerman v. Puccio*, 613 F.3d 60, 69 (1st Cir. 2010) (affirming "damages to the plaintiffs, on behalf of the certified class, in the amount of $256,527,000.[00]" representing the amounts paid by the class to defendants), *affirming Zimmermann v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d 254 (D. Mass. 2008) and Judgment Order, Case No. 03-cv-30261, Dkt. No. 420 (D. Mass. Mar. 18, 2009); *Gill*, 265 F.3d at 947-48 (affirming

$1,335,912.14 CROA actual damages judgment); *Greene v. CCDN, LLC*, 853 F.

Supp. 2d 739, 757 (N.D. Ill. 2011) ($1,433.33 CROA actual damages judgment);

*FTC v. 1st Guar. Mortg. Corp*., 2011 U.S. Dist. LEXIS 38152, *76-77 (S.D. Fla.

Mar. 30, 2011) ($889,794.00 CROA actual damages judgment); *FTC v. RCA

Credit Servs., LLC*, 2010 U.S. Dist. LEXIS 143755, *8 (M.D. Fla. Oct. 14, 2010)

(judgment including CROA violations for $351,529.16); *Kindred v. McLeod*, 2010

U.S. Dist. LEXIS 123116, *1, 2, 12, 15-16, 42 (W.D. Va. Nov. 19, 2010)

($27,900.00 CROA actual damages judgment); *FTC v. Latrese & Kevin Enters*.,

2010 U.S. Dist. LEXIS 142087, *9-10, 13 (M.D. Fla. Jan. 27, 2010) (judgment

including CROA violations for $7,443,732.00); *United States v. Cornerstone

Wealth Corp*., 549 F. Supp. 2d 811, 824 (N.D. Tex. 2008) (judgment including

CROA violations for $547,500.00).[4]  When punitive damages are awarded under

CROA, that award is *in addition to* the CROA actual damages remedy.  *See Asmar

v. Benchmark Literacy Group, Inc*., 2007 U.S. Dist. LEXIS 22166, *2-5 (E.D.

Mich. Mar. 28, 2007) (awarding CROA actual and punitive damages); *Asmar v.

Benchmark Literacy Group, Inc*., 2005 U.S. Dist. LEXIS 23197 (E.D. Mich. Oct.

11, 2005).

---

[4]     *Cf. Rannis v. Fair Credit Lawyers Inc.*, 489 F. Supp. 2d 1110 (C.D. Cal.
2007) (summary judgment granted, damages deferred, case settled); *Helms v.
Consumerinfo.com, Inc*., 436 F. Supp. 2d 1220 (N.D. Ala. 2005) (same).

The Arbitrator's Final Award stands alone in holding that the CROA actual damage remedy is discretionary after holding that Liable Respondents were CROs that violated CROA and were paid for their credit repair services.

### D. WHETHER CLASS MEMBERS' PAYMENTS WERE "VOLUNTARY" IS IRRELEVANT UNDER CROA SECTION 1679G(A)(1)(B), BUT WAS NONETHELESS REQUIRED BY THE ARBITRATOR

The Arbitrator failed to award actual damages under CROA Section 1679g(a)(1)(B) because he found the Classes' payments for their DMPs were "voluntary," and therefore exempt from the CROA actual damages provision.  A. 69 (¶ 194).  But CROA Section 1679g(a)(1)(B) mandates damages calculated as: "***Any amount paid*** by the person to the credit repair organization."  Whether the monies were paid voluntarily, or otherwise, does not factor into the statutory remedy.  Liable Respondents were paid for the DMP credit repair services they provided to the Class by payments they labeled "voluntary contributions" and "fair share."  Those labels are irrelevant under CROA Section 1679g(a)(1)(B) and cannot serve as a basis to circumvent Congress' statutory remedy.

The large majority of "voluntary contributions" collected from the Class by or for Genus and AFS were paid to Respondents.  A. 46, 54 (¶¶ 74, 115). The amount of "voluntary contributions" paid to Liable Respondents "is known and is in the record."  A. 68 (¶ 191); *see also* A. 68 (n. 22).  Those payments to Liable Respondents are subject to the mandatory CROA damages remedy for their

25

violations of CROA Sections 1679b(b), 1679c, 1679d and 1679e. *See Zimmerman*, 613 F.3d at 69 ("The court's $256.5 million award represented the amount paid by the class plaintiffs to the defendants through December 31, 2004.").[5]

The Arbitrator knew CROA Section 1679g(a)(1)(B) does not require payments by the consumer victims of CROA to be either voluntary or involuntary. A. 47 (at 20, n.16 (quoting statute)). The Arbitrator's knowledge is further reflected his statements during the final hearing. *See* A. 152-153 (4989:24-4990:2 ("THE ARBITRATOR: But the actual damage provision doesn't provide for offset. It simply says the greater of A or B and B being the amount paid.").

Yet, the Arbitrator held that the Classes' payments must be "required payments," and not voluntarily made, to qualify for the CROA Section 1679g(a)(1)(B) damage calculation. A. 69 (¶ 194). That requirement does not exist in the statutory text. Nor does it exist in any case interpreting Section 1679g(a)(1)(B). Section 1679g(a)(1)(B) must be applied as drafted, without additional conditions. *See Zimmerman*, 613 F.3d at 69; *Gill*, 265 F.3d at 958 ("the court properly used the amounts consumers paid as the basis for the amount

---

[5]      The for-profit defendants in the *Zimmerman* action provided the substantially same services as Amerix, 3CI and Careone in this case. *See Zimmerman*, 529 F. Supp. 2d at 260. The same violations by DMP processors were found to exist in the Ameridebt cases. *See Polacsek v. Debticated Consumer Counseling*, 413 F. Supp. 2d 539, 541-42 (D. Md. 2005). The owners of the for-profit defendants in *Zimmerman* (John and Richard Puccio) and the Ameridebt cases (Andre Pukke) are analogous to Dancel's ownership and control over Amerix, 3CI and Careone. *Id.*; *see also* A. 35-36, 43, 50 (¶¶ 27-30, 58, 95).

Defendants should be ordered to pay for their wrongdoing."); *Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) (failing to calculate damages based on the amounts paid "deprives Plaintiff of statutory rights found under the Credit Repair Organizations Act").

Having held that the Liable Respondents violated CROA and were paid for credit repair services, the Arbitrator's decision to disregard CROA's mandatory remedy exceeded his powers and constituted manifest disregard of the law. No amount of "linguistic gymnastics" in the Arbitrator's award can justify that result. *Dewan*, 544 Fed. Appx. at 248. *Accord Kashner*, 531 F.3d at 79 ("intentional and willful disregard of the clear and unequivocal language" of the law was manifest disregard warranting vacatur.); *Coffee Beanery*, *Ltd. v. WV, L.L.C.*, 300 Fed. Appx. 415, 420-21 (6th Cir. 2008) ("Moreover, this is not the type of case in which the governing law has not been brought to the attention of the Arbitrator."). The Arbitrator was without the power to graft a "required payments" requirement into the statutory text of 15 U.S.C. § 1679g(a)(1)(B).

### E.    THE ARBITRATOR CONFUSED AND COMBINED CROA SECTIONS 1679g(a)(1) AND SECTION 1679a(3)

The Arbitrator states in Paragraph 194 of his Liability Award (A. 69) that his review of the final hearing record leads him to:

> find and conclude that, while the "voluntary contributions" were strongly urged upon the class members they were not required payments for the performance of services as that concept is defined

and utilized in CROA.  Hence, they are not "payments" under 15 U.S.C. § 1679a(3) nor under 15 U.S.C. § 1679g(a)(1), and are not damages.

The text of CROA Section 1679g(a)(1) is reproduced above, providing that "any amount paid" to a CRO who has violated any provision of CROA "shall" be returned to the victim(s).   There is no requirement in the statutory text, as the Arbitrator claims in Paragraph 194 of his Liability Award, that the "amount[s] paid" be "required payments."

The Arbitrator imports his "required payments" requirement from CROA Section 1679a(3), providing the definition of a CRO.  However, the Arbitrator's "required payments" language is also absent from CROA Section 1679a(3).  But he derives its existence from the requirement that a CRO provide a credit repair service "in return for the payment of money or other valuable consideration."  That language is completely absent from Section 1679g(a)(1), which serves the different purpose of defining "actual damages" under CROA.

Even if somehow relevant to the damage analysis, the Arbitrator held that the Class *had proven* that Liable Respondents were each CROs defined by CROA Section 1679a(3), which definition required the receipt of payments.  A. 50-51 (¶¶ 87, 91, 93, 95).  Therefore, when the Arbitrator held in Paragraph 194 of the Liability Award that the term "payments" or "required payments" borrowed from Section 1679a(3) must be read into Section 1679g(a)(1)(B), he failed to reconcile

28

that he had already held that such payments were made sufficient for him to conclude that the Liable Respondents were each CROs as defined by Section 1679a(3). The Arbitrator's CROA actual damage ruling in the Liability Award at Paragraph 194 is irrevocably inconsistent with his factual and legal findings that Liable Defendants were CROs.  It is impossible for the Arbitrator to have held that the Liable Defendants received payments to render them CROs, but then decide that they did not receive those exact same payments when he considered Section 1679a(3) together with Section 1679g(a)(1).

Sections 1679g(a)(1) and 1679a(3) serve two entirely different purposes under CROA.  The Arbitrator exceeded his powers and manifestly disregarded CROA by grafting his perceived requirements under Section 1679a(3) into Section 1679g(a)(1).  In addition, he rendered inconsistent and irrational rulings that payments *were made* sufficient to find that Liable Respondents were CROs, while denying that those same payments existed for CROA's actual damages remedy.

## F.    EVEN IF CROA'S ACTUAL DAMAGE PROVISIONS REQUIRE PAYMENTS TO BE INVOLUNTARY, THE ARBITRATOR HELD THE MONIES PAID TO LIABLE RESPONDENTS WERE NOT VOLUNTARY

Whether the Classes' DMP payments were "voluntarily" made is irrelevant to the CROA actual damages analysis.  But even if it were relevant, the Arbitrator held that both types of payments to Liable Respondents ("voluntary contributions" and fair share) were *not* voluntarily paid to Liability Respondents.

The majority share of the Classes' "voluntary contributions" paid in the first instance to Genus and AFS were required by contract to be passed through to the Liable Respondents.    A. 55 (¶ 122; "I also must note that the 'voluntary contributions' were initially made to Genus or AFS, and not to the pending Respondents."); *Id.* at A.54 (¶ 115; "While most of those 'voluntary payment' monies ended up with Liable Respondents *in payment for their services in marketing and managing the DMPs*, the payments themselves initially went from the consumers to the non-profit entities, AFS and Genus.") (emphasis added) see also A. 40-42, 56, 69-70 (¶¶ 46-55, 124, 195).  The "voluntary contributions" paid by Class members passed-through to Liable Respondents to satisfy contractual obligations.  Those payments must be awarded to the Class as actual damages for Liable Respondents' CROA violations.

The Arbitrator credited respondents' mere use of the word "voluntary" to avoid CROA protections and remedies.  *See* A. 55 (¶ 120).  *But see Zimmermann v. Cambridge Credit Counseling Corp.*, 409 F.3d 473, 477 (1st Cir. 2005) ("Congress cannot have intended unscrupulous credit repair organizations to have such easy access to CROA immunity.").  It was necessary for Genus and AFS to maintain the illusion of "voluntary" consumer payments to further their claims to tax-exempt status.  *See* 26 U.S.C. § 501(c)(3).  These machinations were ended once the federal tax regulators investigated Genus and AFS.  The Internal Revenue Service

30

("IRS") audited Genus and AFS and determined ██████████████████████████

████████████████████████████████████████████████████████████████████

████. The IRS' audit report of Genus (A. 446-459); the ████████████████ of

Genus' federal tax exemption (A. 461-464), the Closing Agreement (A. 466-471)

and a United States Tax Court Decision directing Genus to pay of taxes (A. 165-

166) were each admitted into evidence during the final hearing.

The IRS' audit report concerning AFS was also admitted into evidence.  A.

473-564. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

### G. THE ARBITRATOR HELD THAT LIABLE RESPONDENTS WERE PAID "FAIR SHARE" FOR CREDIT REPAIR SERVICES PROVIDED TO THE CLASS

Liable Respondents contested that they "received payments" for their credit

repair services.  *See* Liability Award at ¶ 115.  *The Arbitrator rejected that defense*,

holding that the "fair share" payments made to Liable Respondents by the Classes'

creditors were payments for credit repair services.   A. 56, 69-70 (¶¶ 125, 195).

The aggregate amount of those fair share payments to Liable Respondents were known and listed among Liable Respondents' interrogatory responses admitted into evidence during the final hearing.  A. 56 (¶ 124; citing Final Hearing Exhibit No. 720, misstated as Final Hearing Exhibit 721).  The fair share fee payments made to Amerix and 3CI by Genus and AFS from 1998–2009 totaled





A. 589 (Final Hearing Ex. 720 at 19).  Based on the Arbitrator's own findings, the

fair share payments made to Liable Respondents during the Class Period must be

included in the CROA Section 1679g(a)(1)(B) remedy.

Despite the CROA statutory mandate, the Arbitrator refused to award CROA

actual damages to the Class based on the fair share payments to Liable

Respondents.  He rested that finding on a perceived difficulty in apportioning the

damages among the individual Class members, citing no support for that

conclusion.  A. 68, 70 (¶¶ 191, 196, 197).  Such apportionment is unnecessary in a

certified class action, when the CROA judgment can be made to the Class in the

aggregate.  *Zimmerman*, 613 F.3d at 69 ("The court's $256.5 million award

represented the amount paid by the class plaintiffs to the defendants through December 31, 2004.").[6]  Moreover, the "amount" of individual class members' damages is not a legitimate defense to any class certification element.  *See Gunnells v. Healthplan Servs.*, 348 F.3d 417, 427-28 (4th Cir. 2003) ("But Rule 23 contains no suggestion that the necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification.").

Lastly, the Arbitrator ruled during the final hearing that should he find Liable Respondents liable for violating CROA he would require them to provide further evidence of damages.  *See* A. 177 (2860:11-19; "ARBITRATOR:  Seems to me if you're aiming at damages, you're not going to get numbers out of this witness from what we've heard so far, and I think that's reasonable that he would not know the numbers.  If an award comes out where the information is relevant, then, as [Liable Respondents' counsel] Mr. Greenwald says, we can deal with it then and develop what information is needed.") (Tusa Decl., Ex. 14).  That ruling accords with the law in this Circuit, directing damage calculations after findings on liability.  *See Gunnells*, 348 F.3d at 427-28; *Brown v. Nucor Corp.*, 2009 U.S. App. LEXIS 22224, *28 (4th Cir. Aug. 7, 2009).  The Arbitrator made no mention in the

---

[6]     Contrary to *Zimmerman*, the Arbitrator mistakenly believed that a CROA judgment "wouldn't be like the settlements we've had in this case where a lump sum was established from which to draw."  A. 171 (4911:14-16).

Final Award of his prior ruling to sequence the timing of class member damage determinations after liability.  His inconsistencies cannot stand as a basis to deny CROA actual damages to the Class.

### H.    THE ARBITRATOR'S FINAL AWARD WAS COLORED BY HIS NOTIONS OF JUSTICE

An arbitrator that permits his own notions of "industrial justice" to affect his award has exceeded his powers under the FAA.  *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).  Fifty years later, the Supreme Court repeated that same rule as justification for vacating the decision of the arbitration panel.  *Stolt-Nielsen*, 559 U.S. at 676-77 ("In sum, instead of identifying and applying a rule of decision derived from the FAA or either maritime or New York law, the arbitration panel imposed its own policy choice and thus exceeded its powers.").  This Circuit likewise vacates arbitral awards when an arbitrator decides a matter based on "his personal notions of right and wrong."  *Dewan*, 544 Fed. Appx. at 246 (quoting *Patten*, 441 F.3d at 235).

That is precisely what the Arbitrator did here.  Although finding that Liable Respondents violated CROA and deprived the Class of its protections, the Arbitrator recites his admiration of them.  Even though Liable Respondents' CROA violations were supported by the law and evidence, the Arbitrator only reluctantly ruled against them, stating, "I feel constrained to follow the majority rule."  A. 48 (¶ 85).  He continued:  "I do not find Liable Respondents to be

unscrupulous businessmen so the result of the majority rule seems harsh to me." *Id.* Because Liable Respondents were paid *hundreds of millions* of dollars for their credit repair services during the Class Period, A. 56 (¶ 124), bankruptcy was possible if CROA Section 1679g(a)(1)(B) was applied. The Arbitrator made clear that he did not want that result. A. 83 (¶ 14. ("On the basis of their own financial data, I expect the Award will deter any future violations of CROA but will not put Respondents out of business nor into bankruptcy.").

As admitted by Liable Respondents during the arbitration, "CROA is a strict liable statute." A. 390; *see also Hillis v. Equifax Consumer Servs*., 237 F.R.D. 491, 506 (N.D. Ga. 2006) ("The CROA is a strict liability statute;"). The Arbitrator was not free to ignore that result because he believed it was "harsh" or would cause Liable Respondents' bankruptcy. *See Holz-Her U.S., Inc. v. Monarch Mach., Inc*., 47 F. Supp. 2d 646, 648 (W.D.N.C. 1999) ("If indeed Monarch needs to file bankruptcy to preserve its business, that avenue is available to it."). In applying his own notions of justice, the Arbitrator lost sight of the true victims (the Class), and in doing so exceeded his powers and manifestly disregarded the CROA damage remedy.

## I.   THE ARBITRATOR IGNORED MARYLAND'S STATUTORY PROHIBITION AGAINST "VOLUNTARY PAYMENTS" BY DMP PROVIDERS OR SERVICES

The Arbitrator was fully cognizant that "[a]ll questions concerning the construction, validity and interpretation of the [parties' agreements] will be governed by the laws of the State of Maryland without reference to any conflict of laws rules." A. 30-31 (¶ 8). Since 2003, during the Class Period, the law of Maryland is clear that no person engaged in debt management services can require a "voluntary contribution." Md. Fin. Instit. Code Ann. § 12-918(f)(1) provides that "[a] licensee may not require a voluntary contribution from a consumer for any service provided by the licensee to the consumer." *See also id.* § 12-916(b). Appling this statute, AFS was informed by Maryland state regulators in 2006 that its solicitations of voluntary contributions for DMPs were a violation of the statute. A. 182 ("As you are aware, under Maryland's Debt Management Services Act voluntary contributions are not allowed.").

The Arbitrator was aware of the Maryland prohibition against soliciting "voluntary contributions." *See* A. 74-75 (¶ 229). He nevertheless held that Liability Respondents and AFS solicited "voluntary contributions" from the Class through end the Class Period in 2009. *See* A. 69 (¶ 194). That conduct was either impossible or unlawful. The Arbitrator cannot avoid actual damages under CROA by holding that those payments were "voluntary contributions" when soliciting

37

"voluntary contributions" was illegal under the state law applicable to the Classes'

DMP agreements. The Arbitrator's finding that the Class should be denied actual

damages because they paid "voluntary contributions" that were unlawful under

their DMP agreements is irrational at best and manifestly disregards known law.

## II.   THE FINAL AWARD'S DENIAL OF ATTORNEYS' FEES AND COSTS SHOULD BE VACATED

Manifest disregard for fee awards lies where an arbitrator refuses to apply

the proper lodestar standards.  *Porzig*, 497 F.3d at 136.  When a claimant succeeds

in arbitration of a federal fee-shifting claim, like CROA, the arbitrator must

apply, "the same fee calculation methods as the courts -- generally the 'lodestar'

analysis …."  *Id*. at 141.  An arbitrator's failure to apply the correct lodestar rules

should result in vacatur of the fee award.  *Id*. at 142; *see also Coffee Beanery*, 300

Fed. Appx. at 418 (manifest disregard where Arbitrator's analysis "fl[ies] in the

face of clearly established legal precedent."). The Arbitrator's refusal to apply

CROA's fee provisions, or the mandatory lodestar fee standards established by the

Supreme Court and this Circuit exceeded his powers and was manifest disregard of

the law.

### A. THE FEE AWARD WAS DEPENDENT ON THE ARBITRATOR'S DENIAL OF CROA ACTUAL DAMAGES TO THE CLASS

The Arbitrator's decision to reduce Class Counsel's lodestar fee by two-thirds was substantially premised on his decision to deny the Class actual damages under CROA. *See* A. 91-92 (¶ 9; "the amount obtained for the Class was far below what Class Counsel sought."). Should this Court reverse the district court and vacate the Arbitrator's CROA actual damages ruling, the underpinnings for the Fee Award are no longer valid and must be vacated in its entirety.

### B. CROA REQUIRES THE PAYMENT OF REASONABLE ATTORNEYS' FEES

Attorneys' fees for the successful prosecution of CROA claims are mandatory. 15 U.S.C. §§ 1679g(a) and 1679g(a)(3); *Asmar*, 2007 U.S. Dist. LEXIS 22166 at *5. The statute provides in pertinent part that, "any person who fails to comply with the provisions of this title…shall be liable…[i]n the case of any successful action …[for] the costs of the action, together with reasonable attorney's fees." *Id*. The Arbitrator acknowledged that fees are required when "the person(s) bringing the action [is] successful in proving a violation of CROA." A. 88-89 (¶ 3). Plaintiffs and their counsel were successful in proving the Liable Respondents' multiple violations of CROA. However, the Arbitrator denied any award of attorneys' fees or costs in his Final Award. That result violates CROA. When a federal fee-shifting statute provides that fees "shall" be paid to counsel

who successfully prosecutes a claim, that Congressional dictate cannot be ignored. *See Rogers v. City of Virginia Beach*, 1999 U.S. App. LEXIS 15955, *8 (4th Cir. July 15, 1999) ("Under these circumstances, the denial of attorneys' fees and costs on the second claim is inconsistent with the mandatory fee language of § 216(b) (the court '*shall*' award attorneys' fees and costs)") (italics in original).

The perverse result of the Arbitrator's Fee Award is that the Liable Respondents avoid paying *any* attorneys' fees or costs, thereby defeating the purposes of CROA's fee-shifting provisions. The result is more anomalous still, given the Arbitrator's *own ruling* that any fair and equitable final award in this case would include the payment of substantial attorneys' fees by the Liable Respondents.  A. 80-81 (¶ 4).

### C.    THE ARBITRATOR REFUSED TO FOLLOW THE *PERDUE* LODESTAR RULES

The Supreme Court most recently addressed the lodestar rules applicable to federal fee-shifting statutes in *Perdue*, 559 U.S. at 552-53.  *Perdue* affirmed prior rulings by the Supreme Court that prevailing counsel's lodestar is the presumptively reasonable fee in federal fee shifting cases.  *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Pa. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).  After *Perdue*, there are limits on the ability to modify lodestar.  *See Bywaters*, 670 F.3d at 1229-30 ("In the years since *Hensley* [*v. Eckerhard*, 461 U.S. 424 (1983)], the Supreme Court's view on the degree of

40

discretion afforded district courts in adjusting the lodestar figure has undergone change, thus cabining the district court's ability to adjust the lodestar figure to only *'rare' and 'exceptional' cases.*") (quoting *Perdue*) (emphasis added). This Circuit adheres to the lodestar standards set forth in *Perdue*. *See Eastern Associated Coal Corp. v. Dir.*, *OWCP*, 724 F.3d 561, 570 (4th Cir. 2013).

The Arbitrator acknowledged the *Perdue* standards, and then rejected their application. A. 97-98 (¶ 20). He held that he need not consider Class Counsel's lodestar to be the presumptively reasonable fee, nor was he constrained to explain the "rare" and "exceptional" circumstances warranting deviations from lodestar. *Id*. His stated reason was that *Perdue* applies only to requested *enhancements* of lodestar, not reductions to reduce lodestar. *Id*. The federal courts reject that precise interpretation of *Perdue*:

> In *Perdue*, the Court held that the upward adjustment for "results obtained" was not permissible. 130 S. Ct. at 1676. We see no basis for distinguishing between an upward adjustment and a downward adjustment for "results obtained." Neither is permissible absent unusual circumstances.

*Bywaters*, 670 F.3d at 1230. Likewise, the *Perdue* standards are used in this Circuit to consider upward *and* downward adjustments to lodestar. *See Eastern Associated Coal*, 724 F.3d at 570; *Hudson v. Pittsylvania County*, 2013 U.S. Dist. LEXIS 121930, *23 (W.D. Va. Aug. 1, 2013); *AutoPartSource, LLC v. Bruton*, 2013 U.S. Dist. LEXIS 99396, *28-29 (E.D. Va. July 16, 2013). While the

Arbitrator cited *Jackson v. Estelle's Place, LLC*, 391 Fed. App'x. 239 (4th Cir. 2010) in support of his ruling to disregard *Perdue*, he failed to acknowledge that in considering a 25% fee *reduction*, the *Estelle's* court held that the district court complied with the *Perdue* standards. *Id.* at 244.

 *Perdue* affirmed the "important rule[]" that a reasonable fee "is one that is sufficient to induce a capable attorney to undertake representation of a meritorious… case." *Perdue*, 130 S. Ct. at 552. No competent counsel will incur the substantial risks to litigate CROA class litigation under the Arbitrator's reasoning. The Arbitrator exceeded his powers and acted in manifest disregard of the law by disregarding the *Perdue* standards.

### D. THE ARBITRATOR DID NOT APPLY THE *JOHNSON* FACTORS

 The Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1976), adopted the twelve-factor test set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) to determine the adequacy of fee awards. Courts in this Circuit echo the same requirement. *See e.g.*, *McDaniels v. Westlake Servs., LLC*, 2014 U.S. Dist. LEXIS 16081, *39 (D. Md. Feb. 7, 2014) (*Johnson* factors test endorsed by the Supreme Court and Fourth Circuit). In moving for an award of attorneys' fees, Class Counsel advocated for an award based on *Perdue* or *Johnson*, or both. However, the Arbitrator used neither standard. As discussed above, he determined that *Perdue* was inapplicable. His

knowledge of the *Johnson* standard is evident from his prior fee awards citing *Barber*. A. 125. Yet, the Fee Award omits any mention of *Johnson* or *Barber* or an analysis of the *Johnson* factors.

This Circuit has held time and again that refusal to apply the required *Johnson* factors warrants reversal or vacatur of fee awards. *See e.g.*, *Best Med. Int'l, Inc. v. Eckert and Ziegler Nuclitec GmbH*, 505 Fed. Appx. 281 (4th Cir. 2013) (vacating and remanding the district court's fee award for applying the *Johnson* factors "in only the most conclusory manner."); *Best Med. Int'l, Inc. v. Eckert and Ziegler Nuclitec GmbH*, 565 Fed. Appx 232, 233 (4th Cir. 2014) (affirming, after remand, district court's award of attorney's fees after the district performed the required analysis under *Johnson*). The *Best Medical* decisions adhere to the long-standing rule in this Circuit:

> However, because the district court did not apply the factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), in setting the amount of the fee award, it is impossible to determine whether the amount awarded was an abuse of discretion.

*Rusmisell v. Smith*, 2000 U.S. App. LEXIS 26079, *3-4 (4th Cir. Oct. 20, 2000).

> Our review of the record reveals that the district court failed to consider the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), when assessing the amount of the fee award. The district court therefore abused its discretion, and we vacate the order of the district court and remand for application of the *Johnson* factors.

43

*McGlothin v. Murray*, 1998 U.S. App. LEXIS 14893, *2 (4th Cir. July 1, 1998) (citing *Trimper v. City of Norfolk*, 58 F.3d 68, 73 (4th Cir. 1995)). *See also EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) ("In *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S. Ct. 329, 58 L. Ed. 2d 330 (1978), we held that courts ***must consider and discuss*** the twelve factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), to determine a reasonable fee.").

It was not permissible for the Arbitrator to consider factors outside the *Johnson* factors to reduce and deny Class Counsel's requested fee. In *Rum Creek Coal Sales v. Caperton*, 31 F.3d 169 (4th Cir. 1994), the district court reduced counsel's request for attorneys' fees and costs based on myriad rationales (some similar to those cited by the Arbitrator's Fee Award), picking and choosing to apply only some of the *Johnson* factors and premising a 30% reduction of attorneys' fees on the selected factors and others absent from the *Johnson* analysis. That was reversible error. "In short, we conclude that, by considering improper factors and failing to take into account other applicable *Johnson* factors, the district court erred." *Id*. at 180; *see also Anderson v. Morris*, 658 F.2d 246, 248 (4th Cir. 1984) (Reversing fee award because district court considered factors not among the *Johnson* factors and holding that, "[s]uch considerations are not permissible criteria.").

Contrary to the *Johnson* factor test, the Arbitrator used "improper factors" not included among the *Johnson* factors to reduce Class Counsel's lodestar to $0. Chief among those improper factors was his setoff of attorneys' fees by the amount of fees the Arbitrator previously approved in the Interim Settlements, even after Class Counsel voluntarily deducted 100% of those previously-paid fees from their motion for attorneys' fees payable by Liable Respondents. A. 430-431 (¶ 8); A. 87-88, 103 (¶¶ 1, 33, 34). Reliance on improper factors to setoff or reduce an award of attorneys' fees warrants vacatur and reversal. *Anderson*, 658 F.2d at 248.

Class Counsel provided the Arbitrator with an analysis of the twelve *Johnson* factors in support of their fee application. That analysis follows:

> To the extent applicable, this Arbitrator has previously ruled on the *Johnson* factors dealing with the length, novelty and complexity of this case, the zealousness of defenses and the expertise of Class Counsel. *See Ruling on Motion for Payment of Attorney Fees Incentive Payments & Costs*, at 2 (July 19, 2010) ("It is also appropriate to point out that (1) this arbitration has been underway for over 5½ years; (2) it has been zealously prosecuted and vigorously defended; (3) a number of novel and difficult questions have been raised by Respondents and answered by Class Counsel; (4) the quality and skill of Class Counsel's efforts on behalf of their clients has been exemplary; and (5) the results obtained are significant."). The "time and labor expended" are set forth in the October 4, 2013 motion and timesheets annexed to Class Counsel's October 4, 2013 Declarations and the "results obtained" are discussed above in relation to Class Counsel's and the Classes' "success." The remaining *Johnson / K[i]mbrell's* factors also support the reasonableness of Class Counsel's requested lodestar fee:

45

## A.    OPPORTUNITY COST

Class Counsel collectively provided 14,207.23 hours of professional services during this nine-year case.  Most of those services were provided by two firms. In addition, the *Koppell* firm funded hundreds of thousands of dollars in expenses to arbitrate this case.  Class Counsel are small firms with an expertise in consumer litigation and class actions.  Their successful representation of the Class most certainly came at the opportunity cost of pursuing other professional engagements.  *See Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, *22 (S.D. Cal. June 1, 2010) ("class counsel took this case on a contingent fee basis and had to forego other financial opportunities to litigate it for more than two years.").

## B.    CUSTOMARY FEE FOR LIKE WORK

As set forth in the October 4, 2013 Class Counsel Declarations, courts have approved Class Counsel's fees requests, and rates, in other class actions, and other CROA class actions.

## C.    ATTORNEYS' EXPECTATIONS AT THE OUTSET

Class Counsel's retainer agreements with Claimants authorize them to seek approval of attorney fees from any judgment or settlement.  Those agreements demonstrate that Class Counsel expected payment for their professional services from a successful outcome of this case.

## D.    TIME LIMITATIONS SET BY THE CLIENT OR CIRCUMSTANCES

Class Counsel did not set any limits on the time necessary to vigorously prosecute the rights of Claimants and the Class.  The 14,207 hours expended over nine years of arbitration and federal appeals, working on contingency, shows that Class Counsel performed without time limits.

### E.   UNDESIRABILITY OF THE CASE WITHIN THE LEGAL COMMUNITY

During the nine years this case was arbitrated and litigated, Class Counsel are unaware of any other firms that filed and prosecuted CROA class claims against these Respondents. Class Counsel are among a few law firms have taken on the largest credit repair conglomerates and who successfully prosecuted this case, the *Zimmermann* action and the *Limpert* action.

### F.   LENGTH OF THE PROFESSIONAL RELATIONSHIP WITH THE CLIENTS

Class Counsel has represented Claimant Laverne Jones since March 2004, and Stacey Ness (Jones) and Kerry Ness since August 2004. On May 8, 2009, the Arbitrator certified the Class and appointed Class Counsel as counsel for the Class.

### G.   FEE AWARDS IN SIMILAR CASES

Class Counsel believes the most similar analog to this case is the litigated CROA summary judgment won on behalf of a certified class in the *Zimmermann* action, after six years of litigation. Class Counsel's October 4, 2013 submission annexes the *Zimmermann* class counsel's fee declarations. The *Zimmermann* court awarded class counsel 100% of their lodestar ($6,190,000.00), and potentially additional fees. *See Zimmermann v. Cambridge Credit Counseling Corp.*, D. Mass. Case No. 03-30261 (MAP), *Judgment Order* (Dkt. No. 420) (D. Mass. Mar. 18, 2009).

(Excerpted from *Class Counsel's Memorandum of Law in Support of Motion for Attorneys' Fees and Reimbursement of Costs and Expenses* (Nov. 15, 2013)).[7]

---

[7]     Class Counsel's post-final hearing motion for attorneys' fees and costs was further supported by the October 4, 2013 and December 22, 2013 Declarations of G. Oliver Koppell and Joseph S. Tusa. A. 184-189; A. 190-192; A. 194-202; A. 203-206.

Since the Arbitrator did not consider or explain any of the twelve *Johnson* factors, how did he arrive at his Fee Award decision? That question remains unanswered. We know the Arbitrator offered his "*general*" views on the reasonableness of the motion. A. 100 (¶ 24). Instead of discussing the *Johnson* factors or *Perdue* standards, he "used a machete rather than a scalpel, and concepts rather than calculators." A. 104 (¶ 36). The required analysis, however, is missing from the Fee Award.

Admittedly, the Arbitrator was critical of numerous aspects of Class Counsel's fee application. For example, even though Class Counsel submitted twenty-three fee affidavits listing hourly rates approved by courts in the District of Maryland in nationwide class actions, and from the *Zimmerman* and *Polacsek* CROA class actions, A. 431-432 (¶¶ 10-17), and cited federal court orders approving Class Counsel's hourly rates, A. 188 (¶ 11); A. 199-200 (¶ 11), the Arbitrator believed Class Counsel's rates were too high. A. 97-99 (Fee Award ¶¶ 20, 21). While Plaintiffs disagree, what is lacking from the Fee Award is a ruling by the Arbitrator deciding the appropriate hourly rate so that Class Counsel's lodestar could be re-calculated. S*ee e.g.*, *Bell v. Balt. Co.*, 550 F. Supp. 2d 590, 593 (D. Md. 2008) (applying reduced hourly rate to fee analysis).

Although Class Counsel submitted thousands of detailed time entries corroborating their professional services and lodestar calculations, the Arbitrator made reference to those entries as using "block billing."  A. 100 (Fee Award ¶ 24). Again, Plaintiffs disagree. *See O'Well Novelty Co. Ltd. v. Offenbacher, Inc.*, 1999 U.S. Dist. LEXIS 10529, *27 (D. Md. June 4, 1999).  The Arbitrator rejected the 20% block billing reduction suggested by Liable Respondents, A. 101 (Fee Award ¶ 26), finding there to be only "some merit to these contentions [of recording inadequacies], and some adjustment of the claims is warranted as a result."  A. 101 (¶ 25). However, the Arbitrator never supplies the "some reduction" percentage he uses for his block billing reduction or deduction for other recording inadequacies. Again, his analysis eschewing and replacing the *Johnson* factors is inadequate.

A discussion of the *Johnson* factors to determine "reasonableness" of the fee award is absent from the Fee Award.  The Arbitrator's failure to apply the *Johnson* factors analysis exceeded his powers and was manifest disregard of the law.

### E.    THE ARBITRATOR DOUBLE-COUNTED HIS REDUCTION OF ATTORNEYS' FEES

The Arbitrator *twice* reduced Class Counsel's fee application based on the same perceived failing that Class Counsel did not to subtract time working on the claims settled against Genus and AFS.  ¶ 11.[8]  He first cited this factor among other non-*Johnson* factors to reduce Class Counsel's lodestar by two-thirds.  A. 102-104 (¶¶ 31, 33, 36).  He then setoff the reduced lodestar *again* by "the fees and expenses received by Class Counsel in the settlement of the AFS and Genus claims….".  103-104 (¶¶ 34, 36).  Therefore, the Arbitrator twice discounted Class Counsel's fee for same reason.  The Arbitrator's two-thirds reduction and further setoff of Class Counsel's lodestar constitutes "double-counting" and is prohibited. *See Eastern Associated Coal*, 724 F.3d at 570 ("Such double-counting would distort the proper weight to be accorded those factors."); *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 167 (2d Cir. 2011) ("[A] court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors.").

---

[8]    The Arbitrator was wrong that Class Counsel did not discount its lodestar prior to submitting its fee application.  In fact, they voluntarily reduced their lodestar by the full amount of all fees paid in the Interim Settlements (35%).  A. 430-431 (¶ 8).  After voluntarily reducing their lodestar over 35%, Class Counsel further omitted the fees submitted by their local counsel and offered to reduce their fees by another 5%.  A. 92 (Fee Award at 6, n.2).

Even if not impermissible double-counting, the Arbitrator's reduction of attorneys' fees payable by Liable Respondents based on the fees paid in the Interim Settlements was irrational and unfair. The Interim Settlement fees were: (i) completely and voluntarily omitted from Class Counsel's fee application; (ii) paid by other respondents (AFS and Genus); and (iii) were *previously approved by the Arbitrator* as "fair and reasonable" for professional services provided to the Class to achieve those settlements. A. 124-126; A. 134 (¶ 17); A. 143 (¶ 14). The amount of the Interim Settlement fees should not have factored *at all* into Class Counsel's fee application for successfully adjudicating Liable Respondents' CROA liability to judgment after a final hearing.

Even overlooking the errors underlying the two-thirds reduction of attorneys' fees before the double-counting setoff, Class Counsel is (at the very least) entitled to the remaining one-third fee of their unpaid lodestar. A two-thirds reduction based on the lodestar sought by Class Counsel ($4,817,962.00), without any setoff for the fees paid in the Interim Settlements, would have resulted in fee award to Class Counsel in the amount of $1,589,927.46.

## F.    THE ARBITRATOR'S FEE AWARD RELIED ON A VACATED DECISION

The Arbitrator's double-reduction of attorneys' fees based on the fees paid by *other respondents* in the Interim Settlements suffers another fatal failing. After Class Counsel voluntarily reduced their lodestar by the full $2,666,666.00 paid in

the Interim Settlements, their *unpaid* lodestar remained $4,817,962.00.  The courts have universally held that a setoff of counsel's unpaid lodestar for work performed in a related case is improper.

Nevertheless, the Arbitrator did so anyway, relying on a 1992 district court decision from New Jersey.  *See* A. 103 (¶ 34; citing *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 789 F. Supp. 1288 (D.N.J. 1992).  But that district court decision was vacated by the Third Circuit.  *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 421-23 (3d Cir. 1993).  Even after Class Counsel advised the Arbitrator that the district court's holding was vacated, he ignored the Third Circuit's decision and analysis, relying instead on the vacated district court decision.  A. 103, 104 (¶¶ 34, 36).

The *Gulfstream III* litigation was prosecuted in related federal actions filed in California and New Jersey.  *Gulfstream III*, 995 F.2d at 416-17.  Eventually, both actions were consolidated in the New Jersey district court.  *Id*. The plaintiffs settled with one of the defendants (Falcon Jet) for $4,650,001.00.  *Id*.  Thereafter, they proceeded to trial and obtained a liability verdict against a second defendant (Cessna) under the antitrust laws, but the district court entered judgment for $0.  *Id*. The district court then reduced the award of attorneys' fees and expenses due to the plaintiffs' counsel for any work done and paid in the Falcon Jet case and settlement.  *Id*.  The Third Circuit vacated that basis for the district court reduction

52

of attorneys' fees. *Id*. at 421-23 (vacating holding that "the $1,282,500 allocated to attorneys' fees in the Falcon Jet settlement covered all of the fees and expenses sought in this case."). There, as here, plaintiffs' counsel reduced their fee request by the full amount of fees paid in the prior settlement. *Id*. at 421, n.6. However, substantial lodestar for work done by the plaintiffs' counsel in both the settled case (Falcon Jet) and the related case that went to trial (Cessna) remained outstanding. The Third Circuit held that the district court could not setoff counsel's *unpaid* lodestar litigating the case against both defendants by the amount of fees paid in the settled case:

> In contrast, the reduction of a plaintiff's net recovery due to the offset of a jury verdict by prior settlements does not indicate that plaintiff failed to prove any of its claims at trial. It may merely reflect plaintiff's skill as a negotiator with the other defendants, and the circumstance that those negotiations occurred before, rather than after, the jury verdict. Although the district court generally has wide discretion to find "limited success," *Hensley*, 461 U.S. at 437, it would be inappropriate to consider the net recovery resulting from settlement offsets in calculating a limited success multiplier. Indeed, the district court's reduction on this ground appears inconsistent with its conclusion before trial that the settlements did not exceed the maximum possible recovery and that trial should proceed. *See also Sciambra [v. Graham News]*, 892 F.2d [411,] 416 [5th Cir. 1990] ("the effect of the [co-defendant's] settlement on [plaintiff's] recovery of compensatory damages has *no* effect on [plaintiff's] right to recover attorneys' fees") (emphasis added).

*Id*. at 423-24 (modifications and emphasis in original).

The Third Circuit's *Gulfstream III* decision stands with the Fifth Circuit's *Sciambra* decision as supporting the *opposite* result reached by the Arbitrator in

53

the Fee Award. *See also Best Buy Co. v. AU Optronics Corp. (In re TFT-Lcd Flat Panel Antitrust Litig.)*, 2014 U.S. Dist. LEXIS 32207, *57 (N.D. Cal. Feb. 3, 2014) ("HannStar's greater problem is that existing authority, albeit outside the Ninth Circuit which has not spoken on the issue, is dead-set against its position. ***Both the Fifth and Third Circuits have said unequivocally that prior settlements have no effect on a plaintiff's right to recover attorneys' fees and costs.***") (citing *Gulfstream III* and *Sciambra*); emphasis added). Citing *Gulfstream III* and its opinion in *Sciambra*, the Fifth Circuit recently reiterated that, "a ruling to the contrary would discourage plaintiffs from making early settlements with some but not all defendants because a settlement could later operate to preclude full recovery of fees and costs pursuant to the [federal fee shifting statute]." *Funeral Consumers Alliance, Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 339 (5th Cir. 2012).[9]

The Fee Award finds that Class Counsel spent considerable time successfully prosecuting "core issues" against all respondents in this class

---

[9]    The Third Circuit's ruling in *Gulfstream III* has even been applied when the related cases are litigated in *different* courts. *See Bender v. Newell Window Furnishings, Inc*., 2014 U.S. App. LEXIS 5213, *14 (6th Cir. 2014); *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294 (8th Cir. 1996); *Phoenix Bond & Indem. Co. v. Bridge*, 2012 U.S. Dist. LEXIS 173721, *15 (N.D. Ill. Dec. 7, 2012).

arbitration.[10]  According to the accepted Third Circuit *Gulfstream III* standard, it was improper to setoff Class Counsel's unpaid lodestar for that work.  Yet, the Arbitrator setoff Class Counsel's lodestar based on the *Gulfstream III* district court decision he *knew* was vacated. Those rulings in the Fee Award exceeded his powers, constituted manifest disregard of the law and irrationally contradict this own findings concerning the successful efforts of Class Counsel.

### G.    THE ARBITRATOR CONTRADICTED HIS OWN RULINGS TO DENY COSTS TO CLASS COUNSEL

A successful plaintiff suing under CROA is entitled to reimbursement of costs related to bringing the action. 15 U.S.C. § 1679g(a)(3).

#### 1.    The Arbitrator's Reason for Denying Costs was Irrational

All costs included in Class Counsel's fee application totaling $338,172.48 were incurred *after* approval of the Interim Settlement with Genus in 2011.  All prior costs were reimbursed in the Interim Settlements.  The Arbitrator falsely states that: "Claimants include in their Application fees and *expenses* which they admit were incurred in dealing exclusively with other parties who settled their claims with class counsel."  A. 102 (¶ 31; emphasis added).  Plaintiffs did not include any such expenses in their application.  The costs included in Class

---

[10]    "On the other hand, as noted elsewhere herein, a large amount of time was spent by Class Counsel defending 'core' issues, such as clause construction and class certification. These issues were common to all claims and would have been involved even had Claimants sought relief only under the CROA disclosure theory. And appeals of these issues also were litigated vigorously."  A. 95 (¶ 15).

Counsel's post-final hearing fee application were *exclusively* related to the final hearing and post-final hearing briefing and proceedings that obtained the CROA liability findings. Yet, in just three lines of the Final Award, the Arbitrator reduced Plaintiffs' and their counsel's request for costs by two-thirds, "[f]or much of the same reasoning as is set forth above, ….." A. 104-105 (¶ 37). However, "much of the same reasoning" cannot possibly apply. Most of the reasons the Arbitrator used to justify his reduction of Class Counsel's fees had no relation to the costs incurred by Class Counsel since 2011 to prosecute the final hearing. For instance, Class Counsel's hourly billing rates (A. 99-100; ¶¶ 22-23), time record keeping (A. 100; ¶ 24), pre-2011 time entries (A. 101; ¶ 27) and time devoted to arbitrating claims against Genus and AFS (A. 102; ¶ 31) have no bearing on the costs incurred after 2011 to prepare and prosecute the final hearing and post-final hearing briefing. The largest portion of costs incurred by Class Counsel by far was the Arbitrator's fees related to the final hearing and post-final hearing proceedings, expenses incurred *after* approval of the Interim Settlements. A. 200 (¶ 15). The Arbitrator's award reducing Class Counsel's costs exceeded his powers, manifestly disregarded CROA Section 1679g(a)(3) and is irrational.

2.    The Arbitrator Ignored the Law and the Purpose of Expense
Awards in Denying Class Counsel an Award of Out-Of-Pocket
Expenses

Under CROA an award of costs under the statute is mandatory.  15 U.S.C.
§ 1679g(a)(3) (violator "shall be liable … for **the costs of the action**, together with
reasonable attorneys' fees.")    Nonetheless, the Arbitrator refused to apply it,
opting instead to subsume costs in the prior awards of attorneys' fees.  But CROA
is clear that costs are distinct from attorneys' fees.  Congress chose to award both,
separately, to a successful plaintiff.  *Id*.

"The great weight of authority in this circuit and others clearly establishes
that a prevailing plaintiff is entitled to compensation for reasonable litigation
expenses [incurred in bringing an action under a cost shifting statute]."  *Daly v.
Hill*, 790 F.2d 1071, 1084 (4th Cir. 1986).[11]  Counsel's out-of pocket expenses, are
"integrally related to the work of the attorney and the services for which outlays
are made may play a significant role in the ultimate success of litigation…." *Id.* at
1083; *accord Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988); *Kabore v.
Anchor Staffing, Inc.*, 2012 U.S. Dist. LEXIS 149761 at *15-17 (D. Md. Oct. 17,
2012); *Almendarez v. J.T.T. Enters. Corp.*, 2010 U.S. Dist. LEXIS 88043, at *21

---

[11]    This is true even for federal fee-shifting statutes that statutorily combine
awards of costs and attorneys' fees, such as in actions under 28 U.S.C. § 1988
where a prevailing party may recover "a reasonable attorneys' fee as part of costs."
*Id*. *See Daly* at 1083-84.  *A fortiori*, an award of costs is required to foster the
purpose of CROA's fee-shifting provisions that *separately* award fees and costs.

(D. Md. Aug. 25, 2010). Fee shifting statutes like the CROA are intended to encourage suit against wrongdoers, in part by shifting the costs to defendants who have violated its provisions.

Failure to award costs frustrates the purpose of federal fee-shifting statutes. *See Project Vote/Voting for Am., Inc. v. Dickerson*, 444 Fed. Appx. 660, 664 (4th Cir. 2011). As noted in *Daly*, the failure to reimburse expenses to counsel who bears that burden for their clients in fee-shifting cases will result in such cases being "enforced either less frequently or less efficiently than Congress intended." 790 F.2d at 1183. The Arbitrator is guilty of manifest disregard of the law and his decision denying all costs to Class Counsel should be vacated.

3.    The Arbitrator Held that a "Clawback" of Costs Incurred by Class Counsel was Inappropriate, then Did So Anyway

The Arbitrator held it inappropriate to "clawback" any portion of the fees or costs awarded to Class Counsel in interim settlements. A. 104 (¶ 36). However, he did precisely that, reducing the one-third of Class Counsel's costs he awarded from $112,724.16 to $0 due to the attorneys' fees paid in the Interim Settlements. A. 104-105 (¶ 37). Those findings are contradictory and irrational.

## IV.   THE DISTRICT COURT'S "CURSORY REVIEW" OF PLAINTIFFS' MOTION TO PARTIALLY VACATE WAS REVERSIBLE ERROR

The FAA, 9 U.S.C. § 10, provides an arbitral party with the right to move for vacatur of any final arbitration award.  When a statutory right is concerned, the district court is tasked with reviewing the award to determine whether the arbitrator preserved all "substantive rights afforded by the statute; …." *Gilmer*, 500 U.S. at 26; *Long John Silver's Rests*, 514 F.3d at 350.  With CROA specifically, the arbitrator was required to preserve and apply all remedies provided in 15 U.S.C. § 1679g.  *CompuCredit*, 132 S. Ct. at 671.

Referencing the amount of time this case has been pending, the district court gave only a self-described "cursory review" to Plaintiffs' motion and supporting submission. A. 436.  It made no findings of fact.  A. 435-437.  It did not reach, decide or resolve any of the bases proffered by Plaintiffs for its motion to partially vacate the Arbitrator's decision.   The District Court merely adopted the Arbitrator's Final Award without question and without performing any analysis to determine whether the Arbitrator exceeded his powers or manifestly disregarded the law.  *Id*.

The District Court's 2-page Memorandum decision stated that Plaintiffs and the Class "bargained" for the district court's "cursory review" of the arbitral award. A. 436. That ruling is reversible error for at least three reasons.  First, pursuant to *Gilmer*, *Mitsubishi* and *CompuCredit*, consumers cannot "bargain away" their

federal statutory rights. Second, the waiver of any statutory right or remedy codified in CROA cannot be waived, in any forum.  15 U.S.C § 1679f.   Third, the district court ignored its own prior ruling holding that Plaintiffs and the Class did not bargain for any term in the agreements that compelled them to arbitration. Rather, the district court had ruled that the Plaintiffs' and Class members' agreements were "procedural[ly] unconscionab[le]" and *not* bargained. *Jones v. Genus Credit Mgmt. Corp*., 353 F. Supp. 2d 598, 601 (D. Md. 2005).

## CONCLUSION

For the forgoing reasons, this Court should:

1.    Reverse the district court's Final Judgment (October 20, 2014), Memorandum (October 6, 2014) and Order (October 6, 2014) to the extent each denied Plaintiffs' motion to vacate the Final Award's denial of an award of actual damages to the Class pursuant to 15 U.S.C. § 1679g(a)(1)(B);

2.    Remand this case to the district court and direct entry of Judgment for the Class against the Liable Respondents, jointly and severally, in an amount calculated pursuant to 15 U.S.C. § 1679g(a)(1)(B), including all amounts ultimately paid to the Liable Respondents deriving from: i) direct payments by the Class termed "voluntary contributions;" and ii) payments termed fair share; or iii) alternatively, remanding this case to the American Arbitration Association ("AAA") and directing an award of actual damages pursuant to 15 U.S.C. § 1679g(a)(1)(B) consistent with this Court's decision;

3.    Reverse the District Court's Final Judgment, Memorandum and Order to the extent each denied Plaintiffs' motion to vacate the Final Award's denial of an award of attorneys' fees to Class Counsel;

4.    Remand this case to the district court and direct entry of Judgment of attorneys' fees to Class Counsel to be paid by the Liable Respondents, jointly and severally, in an amount totaling:  i) a percentage of the common fund Judgment of

61

CROA actual damages to be determined by this Court; or ii) a lodestar fee award in the amount of Class Counsel's post-final hearing fee application totaling $4,817,962.00, supplemented by Plaintiffs' counsel's lodestar incurred to prepare and prosecute the motion to partially vacate in the district court and this appeal; or iii) alternatively, if this Court does not vacate the two-thirds reduction of Class Counsel's lodestar, a lodestar fee award in the amount of one-third of Class Counsel's post-final hearing fee application, reduced two-thirds by the challenged Fee Award, totaling $1,589,927.46, supplemented by Plaintiffs' counsel's lodestar incurred to prepare and prosecute the motion to partially vacate in the district court and this appeal; or iv) alternatively, remanding this case to the AAA and directing an award of attorneys' fees consistent with this Court's decision;

5.      Reverse the District Court's Final Judgment, Memorandum and Order to the extent each denied Plaintiffs' motion to vacate the Final Award's denial of an award of costs and expenses to Class Counsel; and

6.      Remand this case to the district court and direct entry of Judgment of costs and expenses to Class Counsel to be paid by the Liable Respondents, jointly and severally, in an amount totaling: i) the full amount of costs and expenses requested in Class Counsel's post-final hearing fee application totaling $338,172.48, supplemented by Plaintiffs' counsel's costs incurred to prepare and prosecute the motion to partially vacate in the district court and this appeal; or

ii) alternatively, remanding this case to the AAA and directing an award of costs

and expenses consistent with this Court's Order and Judgment.

Respectfully submitted,

**TUSA P.C.**

/s/ Joseph S. Tusa
Joseph S. Tusa
P.O. Box 566
53345 Main Road, Ste. 10-1
Southold, NY 11971
Tel. (631) 407-5100
joseph.tusapc@gmail.com

**LAW OFFICES OF G. OLIVER
  KOPPELL & ASSOCIATES**
G. Oliver Koppell
John F. Duane
Daniel F. Schreck
99 Park Avenue, Ste. 330
New York, NY  10016
Tel. (212) 867-3838
okoppell@koppellaw.com
dschreck@koppellaw.com

***Attorneys for Plaintiffs
and Class Counsel***

Peter A. Holland
**THE HOLLAND LAW FIRM, P.C.**
910 Towne Centre Blvd., Ste. 250
P.O. Box 6268
Annapolis, MD  21401
Tel. (410) 280-6133
peter@hollandlawfirm.com

**GREGORY S. DUNCAN, ESQ.**

Gregory S. Duncan
412 East Jefferson Street
Charlottesville, VA  22902
Tel.  (434) 979-8556
gregdun@ntelos.net

*Attorneys for Plaintiffs*

## REQUEST FOR ORAL ARGUMENT

Plaintiffs-Appellants request oral argument. Among the significant issues presented for review are the following issues of first impression:

1.    Whether an arbitrator may change the express remedy set forth in a federal statute, applying that statutory remedy contrary to every federal court that has interpreted the same federal statute and in a manner that denies damages to a certified class, or whether the arbitrator's award must be vacated and reversed.

2.    Whether an arbitrator's award reviewable in this Circuit deciding a motion for federal statutory-fee shifting attorneys' fees and costs may ignore and fail to apply the "*Johnson* factors" test required in this Circuit, or whether the arbitrator's award must be vacated and reversed.

/s/ Joseph S. Tusa
Joseph S. Tusa
**TUSA P.C.**
P.O. Box 566
53345 Main Road, Ste. 10-1
Southold, NY 11971
Tel. (631) 407-5100
joseph.tusapc@gmail.com

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*13,976*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: December 22, 2014            /s/ Joseph S. Tusa
                                    *Counsel for Appellants*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 22nd day of December, 2014 I caused this Redacted Brief of Appellants and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Catherine Anne Bledsoe
Lawrence S. Greenwald
Brian L. Moffet
GORDON FEINBLATT LLC
Garrett Building
233 East Redwood Street
Baltimore, MD 21202
(410) 576-4198

*Counsel for Appellees*

I further certify that on this 22nd day of December, 2014, I caused the required copies of the Redacted Brief of Appellants and Joint Appendix to be hand filed with the Clerk of the Court and a copy of the Sealed Brief of Appellants and Sealed Volume Joint Appendix to be served, via UPS Ground Transportation, upon counsel for the Appellees, at the above address.

/s/ Joseph S. Tusa
*Counsel for Appellants*