RECORD NO. 14-2160

In The

# United States Court of Appeals

For The Fourth Circuit

## LAVERNE JONES; STACEY JONES, f/k/a Stacey Ness; KERRY NESS, Individually and on behalf of the Certified Class,

*Plaintiffs – Appellants*,

v.

## BERNALDO DANCEL; AMERIX CORPORATION; 3C INCORPORATED; CAREONE SERVICES, INCORPORATED; ASCEND ONE CORPORATION,

*Defendants – Appellees.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE

_____

### REPLY BRIEF OF APPELLANTS

_____

G. Oliver Koppell
LAW OFFICES OF G. OLIVER
  KOPPELL & ASSOCIATES
99 Park Avenue, Suite 330
New York, New York  10016
(212) 867-3838

*Counsel for Appellants*

Peter A. Holland
THE HOLLAND LAW FIRM, P.C.
910 Towne Centre Boulevard, Suite 250
Post Office Box 6268
Annapolis, Maryland  21401
(410) 280-6133

*Counsel for Appellants*

Gregory S. Duncan
LAW OFFICE OF
  GREGORY S. DUNCAN
412 East Jefferson Street
Charlottesville, Virginia  22902
(434) 979-8556

*Counsel for Appellants*

Joseph S. Tusa
TUSA PC
53345 Main Road, Suite 10-1
Post Office Box 566
Southold, New York  11971
(631) 407-5100

*Counsel for Appellants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

SUMMARY OF ARGUMENT .............................................................1

ARGUMENT .......................................................................................2

    I.    THE ARBITRATOR'S KNOWING DEPARTURES FROM CROA TO DENY ACTUAL DAMAGES MUST BE VACATED .....................................................................................2

        A.    THE ARBITRATOR DID NOT RELY ON STATUTORY CONSTRUCTION RATIONALES FOR HIS FAILURE TO APPLY 15 U.S.C. § 1679G(A)(1)(B) AS DRAFTED ..................................3

        B.    THE ARBITRATOR'S FINAL AWARD CONFLICTS WITH THE UNANIMOUS APPLICATION OF THE CROA ACTUAL DAMAGES REMEDY BY THE FEDERAL COURTS ............................6

        C.    THE ARBITRATOR DENIED DEFENDANTS' PRIVITY OF PAYMENT DEFENSE ....................................................................9

        D.    DEFENDANTS CANNOT ESCAPE THE ARBITRATOR'S RULING THAT FAIR SHARE PAYMENTS TO THEM ARE CROA ACTUAL DAMAGES .......................................................11

        E.    MARYLAND LAW RENDERED VOLUNTARY CONTRIBUTIONS ILLEGAL DURING THE CLASS PERIOD ..............14

    II.    THE ARBITRATOR SUBSTITUTED HIS PERSONAL NOTIONS OF JUSTICE FOR CROA'S REMEDIES THAT HE BELIEVED WERE OVERLY "HARSH" ...................................14

    III.    THE ARBITRATOR KNOWINGLY FAILED TO APPLY THE ATTORNEYS' FEES STANDARDS REQUIRED BY CROA, JOHNSON AND PERDUE .....................................16

i

A. THE ARBITRATOR KNOWINGLY FAILED TO COMPLY WITH CROA'S STATUTORY MANDATE TO AWARD REASONABLE ATTORNEYS' FEES ....................................................17

B. THE ARBITRATOR DID NOT CONSIDER AND EXPLAIN HIS ATTORNEYS' FEE ANALYSIS UNDER THE *JOHNSON* FACTORS ...............................................................18

C. THE ARBITRATOR IMPROPERLY REJECTED THE *PERDUE* LODESTAR STANDARDS .............................................20

D. THE FEE AWARD DID NOT RELY ON THE *FAIR HOUSING* DECISION ...................................................22

E. THE ARBITRATOR RELIED ON THE VACATED *GULFSTREAM III* DECISION TO SETOFF CLASS COUNSEL'S UNPAID LODESTAR ..................................................24

F. CROA ALSO PROHIBITS THE ARBITRATOR'S SETOFF OF ATTORNEYS' FEES AND COSTS ................................26

G. DEFENDANTS RELY ON A FALLACY THAT THEY ADMITTED THEIR VIOLATIONS OF CROA SECTIONS 1679C, 1679D AND 1679E ...................................................26

IV. THE ARBITRATOR'S DENIAL OF COSTS MUST BE VACATED ........................................................27

V. THE COURTS MUST REMEDY THE DENIAL OF FEDERAL STATUTORY RIGHTS IN ARBITRATION .................28

CONCLUSION ......................................................30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## <u>CASES</u>

*Amerix Corp. v. Jones,*
   457 Fed. Appx. 287 (4th Cir. 2011) ...............................................27

*Amerix Corp. v. Jones,*
   2012 U.S. Dist. LEXIS 5204 (D. Md. Jan. 17, 2012) ...................27

*Barber v. Kimbrell's, Inc.,*
   577 F.2d 216 (4th Cir.), cert. denied,
   439 U.S. 934, 99 S. Ct. 329, 58 L. Ed. 2d 330 (1978) ..................18

*Best Med. Int'l, Inc. v. Eckert and Ziegler Nuclitec GmbH,*
   505 Fed. Appx. 281 (4th Cir. 2013) ...............................................19

*Brown v. Nucor Corp.,*
   2009 U.S. App. LEXIS 22224 (4th Cir. Aug. 7, 2009)...........12, 13

*Carcieri v. Salazar,*
   555 U.S. 379 (2009).........................................................................4

*City of Burlington v. Dague,*
   505 U.S. 557 (1992).......................................................................21

*Cole v. Burns Int'l Security Servs., Inc.,*
   105 F.3d 1465 (D.C. Cir. 1997)....................................................29

*CompuCredit Corp. v. Greenwood,*
   132 S. Ct. 665 (2012)......................................................12, 18, 28

*Dewan v. Walia,*
   544 Fed. Appx. 240 (4th Cir. 2013) ..............................................15

*Eastern Associated Coal Corp. v. Dir., OWCP,*
   724 F.3d 561 (4th Cir. 2013) ...................................................21, 24

*EEOC v. Service News Co.*,
    898 F.2d 958 (4th Cir. 1990) ..........................................................................18

*Fair Housing Council v. Landow*,
    999 F.2d 92 (4th Cir. 1993) ...........................................................................22

*FTC v. AmeriDebt, Inc.*,
    343 F. Supp. 2d 451 (D. Md. 2004)..................................................................8

*Genus Credit Mgt. Corp. v. Jones*,
    D. Md. Case No. JFM-09-1498, Order (D. Md. Sep. 8, 2009) .....................27

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991)...........................................................................2, 28, 29

*Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters*,
    511 F.2d 839 (4th Cir. 1975) ..........................................................................13

*Gross* v. *FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009).........................................................................................4

*Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*,
    789 F. Supp. 1288 (D.N.J. 1992).............................................................24, 25

*Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*,
    995 F.2d 414 (3d Cir. 1993) ..........................................................................24

*Gunnells v. Healthplan Servs.*,
    348 F.3d 417 (4th Cir. 2003) .............................................................11, 12, 13

*Halligan v. Piper Jaffray, Inc.*,
    148 F.3d 197 (2d Cir. 1998) ..................................................................... 29-30

*Hardt v. Reliance Std. Life Ins. Co.*,
    560 U.S. 242 (2010).................................................................................3, 4, 6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)........................................................................................26

*In re Vitamin C Antitrust Litig.*,
     2013 U.S. Dist. LEXIS 182701 (E.D.N.Y. Dec. 30, 2013)...............23, 25, 26

*Jackson v. Estelle's Place*, LLC,
     391 Fed. Appx. 239 (4th Cir. 2010) ...........................................................21

*Jama v. Immigration & Customs Enforcement*,
     543 U.S. 335 (2005)...................................................................................6

*Johnson v. Georgia Highway Express*,
     488 F.2d 714 (5th Cir. 1974) .............................................*passim*

*Jones v. Southpeak Interactive Corp.*,
     2015 U.S. App. LEXIS 1114 (4th Cir. Jan. 26, 2015)............................19, 26

*Koveleskie v. SBC Capital Mkts., Inc.*,
     167 F.3d 361 (7th Cir. 1999) ...................................................................29

*Long John Silver's Rests., Inc. v. Cole*,
     514 F.3d 345 (4th Cir. 2008) ...................................................................29

*McAfee v. Boczar*,
     738 F.3d 81 (4th Cir. 2013) ......................................................................19

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
     473 U.S. 614 (1985)..................................................................................28

*Newton v. Am. Debt Servs.*,
     854 F. Supp. 2d 712 (N.D. Cal. 2012)........................................................28

*Oxford Health Plans LLC v. Sutter*,
     133 S. Ct. 2064 (2013)...............................................................................30

*Pasquantino* v. *United States*,
     544 U.S. 349 (2005) ...................................................................................3

*Patten v. Signator Ins. Agency, Inc.*,
     441 F.3d 230 (4th Cir. 2006) .....................................................................15

*Perdue v. Kenny A.*,
   559 U.S. 542, 130 S. Ct. 1662 (2010) ......................................................*passim*

*Polacsek v. Debticated Consumer Counseling, Inc.*,
   413 F. Supp. 2d 539 (D. Md. 2005) ...........................................................7, 8

*Porzig v. Dresdner, Kleinwort, Benson, N.A., LLC*,
   497 F.3d 133 (2d Cir. 2007) ...........................................................................17

*Robb Evans & Assocs., LLC v. Holibaugh*,
   609 F.3d 359 (4th Cir. 2010), *cert. denied*,
   2011 U.S. LEXIS 147 (2011) .............................................................................8

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   170 F.3d 1 (1st Cir. 1999)................................................................................29

*Rum Creek Coal Sales v. Caperton*,
   31 F.3d 169 (4th Cir. 1994) .............................................................................20

*Shearson/American Express v. McMahon*,
   482 U.S. 220 (1987)................................................................................2, 28

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010)..........................................................................................15

*Story Parchment Co. v. Paterson Parchment Co.*,
   282 U.S. 555 (1931)..........................................................................................13

*Williams v. Cigna Fin. Advisors*,
   197 F.3d 752 (5th Cir. 1999) ...........................................................................29

*Zimmerman v. Cambridge Credit Counseling, Corp.*,
   409 F.3d 473 (1st Cir. 2005) .............................................................................7

*Zimmermann v. Cambridge Credit Counseling Corp.*,
    529 F. Supp. 2d 254 (D. Mass. 2008), *aff'd*,
    *Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010) ..................................7, 13

*Zimmermann v. Cambridge Credit Counseling Corp.*,
    D. Mass. Case No. 03-30261 (MAP),
    *Judgment Order* (Dkt. No. 420) (D. Mass. Mar. 18, 2009) ........................20

## STATUTES

9 U.S.C. § 10 ................................................................................................30

15 U.S.C. § 1679a .........................................................................................10

15 U.S.C. § 1679a(3) ...............................................................................*passim*

15 U.S.C. § 1679b(b) ...............................................................................*passim*

15 U.S.C. § 1679c ...........................................................................1, 16, 26, 27

15 U.S.C. § 1679d ...........................................................................1, 16, 26, 27

15 U.S.C. § 1679e ...........................................................................1, 16, 26, 27

15 U.S.C. § 1679f ...........................................................................................28

15 U.S.C. § 1679f(a) .......................................................................................12

15 U.S.C. § 1679g(a) .......................................................................................26

15 U.S.C. § 1679g(a)(1) ....................................................................................6

15 U.S.C. § 1679g(a)(1)(B) .......................................................................*passim*

15 U.S.C. § 1679g(a)(3) ...........................................................................17, 26

Md. Code Ann. § 12-916(b) ............................................................................14

Md. Code Ann. § 12-918(f)(1) .........................................................................14

## SUMMARY OF ARGUMENT

After a Final Hearing, the Arbitrator ruled that the Liable Defendants each intentionally violated CROA, 15 U.S.C. §§ 1679c, 1679d, 1679e and received advance payments for credit repair services in violation of 15 U.S.C. § 1679b(b). Plfs. Opening Br. at 7-13, 21-22.[1]  He held those violations injured "hundreds of thousands" of Class members over an eleven-year class period.  *Id*. The Arbitrator levied punitive damages against Liable Defendants, albeit in too small an amount to be distributed to the Class. *Id*.  Liable Defendants were paid over $250 million in Class member DMP payments and $300 million in Fair Share payments from the Classes' creditors. Yet, contrary to 15 U.S.C § 1679g(a)(1)(B) requiring actual damages calculated as "any amount paid" to Liable Defendants, the Arbitrator did not award any actual damages. That result is contrary to the *unanimous* application of CROA's actual damages remedy by the federal courts, including CROA class decisions and judgments in similar DMP credit repair schemes.

The Arbitrator also knowingly failed to adhere to CROA's fee-shifting mandate for attorneys' fees and costs. To determine reasonableness of lodestar fee awards, arbitrators like courts must apply the *Johnson* factors.  The Arbitrator did not.  The Arbitrator also rejected application of the Supreme Court's *Perdue*

---

[1]      "Plfs. Opening Br." refers to the *Sealed Brief of Appellants*.  Plaintiffs incorporate all terms defined in their opening brief.

lodestar standards.  Liable Defendants concede those findings.  To justify his total denial of fees and costs to Class Counsel that successfully prosecuted the Classes' CROA claims and many "core" issues, the Arbitrator offered his "general" views on the fee motion and disregarded "objective standards."  A. 95, 104 (¶¶ 15, 36).

Liable Defendants contend that, "[w]hether the Arbitrator applied the law correctly is irrelevant."  Resp. at 19.[2]  They further claim the Class members "bargained" for the Arbitrator's mistaken application of the CROA remedy.  *Id*. But the Supreme Court provides has specifically held, "although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute at issue." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32, n.4 (1991) (quoting *Shearson/American Express v. McMahon*, 482 U.S. 220, 232 (1987)).  Here, the Arbitrator did not comply with the requirements of CROA, the statute at issue.

## **ARGUMENT**

## I.   **THE ARBITRATOR'S KNOWING DEPARTURES FROM CROA TO DENY ACTUAL DAMAGES MUST BE VACATED**

Liable Defendants cannot point to language in 15 U.S.C. § 1679g(a)(1)(B) supporting the Arbitrator's inclusion of a "required payments" requirement to qualify for the CROA actual damages remedy.  *See* A. 69 (¶ 194).  No such requirement exists.  Section 1679g(a)(1)(B) provides that "any amounts paid" to

---

[2]     "Resp." refers to the *Response Brief of Appellees* (Doc. No. 46).

the CROA violator "shall be" the actual damages remedy. The Arbitrator's addition of statutory damage requirements exceeded his powers by "invent[ing] a statute rather than interpret[ing] one." *Hardt v. Reliance Std. Life Ins. Co*., 560 U.S. 242, 252 (2010) (quoting *Pasquantino* v. *United States*, 544 U.S. 349, 359 (2005); modification in original).

## A. THE ARBITRATOR DID NOT RELY ON STATUTORY CONSTRUCTION RATIONALES FOR HIS FAILURE TO APPLY 15 U.S.C. § 1679G(A)(1)(B) AS DRAFTED

Liable Defendants rely on claimed "bedrock" principles of statutory construction to justify the meaning of Section 1679g(a)(1)(B) invented by the Arbitrator. Resp. 22-28. For that exercise, they borrow language from *other* sections of CROA. None of other sections used the unambiguous term "any amounts paid" that Congress chose in Section 1679g(a)(1)(B). That language is plain and unambiguous and must be applied.

The Arbitrator did not offer *any* statutory construction rationale to support his addition of a "required payments" element to Section 1679g(a)(1)(B). A. 69 (¶ 194). Liable Defendants' argument is, therefore, complete conjecture. If considered, statutory construction requires application of the plain and unambiguous language of a federal statute without regard to other considerations:

> This case requires us to apply settled principles of statutory construction under which we must first determine whether the statutory text is plain and unambiguous. *United States* v. *Gonzales*, 520 U.S. 1, 4, 117 S. Ct. 1032, 137 L. Ed. 2d 132 (1997). If it is, we must apply the statute according to its terms.

*Carcieri v. Salazar*, 555 U.S. 379, 387 (2009); *see also Hardt*, 560 U.S. at 251 (2010) ("We must enforce plain and unambiguous statutory language according to its terms."). Words of a statute must be given their "ordinary meaning." *Gross* v. *FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).

The Arbitrator did not apply Section 1679g(a)(1)(B) as drafted by Congress. Instead, he added words to the statute that Congress did not include. Liable Defendants defend his approach, arguing that the Arbitrator was permitted to borrow a "required payments" element for actual damages from two *other* sections of CROA, 15 U.S.C. § 1679a(3) and § 1679b(b). Neither section mentions "required payments." But even if Section 1679a(3) contained a "required payments" element to define a CRO, the Arbitrator held that all Liable Defendants were CROs. *See* Plfs. Opening Br. 29-31.

Liable Defendants' reliance on Section 1679b(b) is particularly inappropriate. First, the Arbitrator did not cite Section 1679b(b) in support of his "required payments" ruling in Paragraph 194 of the Liability Award. Second, the Arbitrator *rejected* the argument that advance payments for credit repair services must be involuntarily made to violate Section 1679b(b). *See* A. 162-63 (4828:17–

4

4829:7; discussing Section 1679b(b): "THE ARBITRATOR: It doesn't say it has to come from the consumer. ***It doesn't have to say voluntary, involuntary.***") (emphasis added).

The Arbitrator's application of Section 1679g(a)(1)(B) by borrowing language from Sections 1679a(3) or 1679b(b) contravenes another settled rule of statutory construction. When Congress uses words or phrases in one part of a statute, and uses different language in another part, the different usage was intentional and meant to reflect different meanings. Conflating words in two different sections of a statute, as done by the Arbitrator and Liable Defendants,

> "runs afoul of the usual rule that 'when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended'" *Sosa* v. *Alvarez-Machain*, 542 U.S. 711, n. 9, 542 U.S. 692, 159 L. Ed. 2d 718, 741, 124 S. Ct. 2739 (2004)) (quoting 2A N. Singer, Statutes and Statutory Construction § 46:06, p 194 (6th ed. 2000)); *accord*, *United States* v. *Gonzales*, 520 U.S. 1, 5, 137 L. Ed. 2d 132, 117 S. Ct. 1032 (1997) ("'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion'"); *Russello* v. *United States*, 464 U.S. 16, 23, 78 L. Ed. 2d 17, 104 S. Ct. 296 (1983) ("We refrain from concluding here that the differing language in the two subsections has the same meaning in each. We would not presume to ascribe this difference to a simple mistake in draftsmanship").

*Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 357 (2005). Borrowing language of Sections 1679a(3) or 1679b(b) into the actual damages remedy provided in Section 1679g(a)(1)(B) impermissibly "invent[s] a statute rather than interpret[s] one." *Hardt*, 560 U.S. at 252 (citation omitted).

The Section 1679g(a)(1) remedy *for any violation of CROA* is plain and unambiguous. Violators "shall" pay no less than "any amounts paid" to them back to the injured consumers. 15 U.S.C. § 1679g(a)(1)(B). Liable Defendants' reliance on statutory construction cannot supplant plain and unambiguous damage remedy.

### B.   THE ARBITRATOR'S FINAL AWARD CONFLICTS WITH THE *UNANIMOUS* APPLICATION OF THE CROA ACTUAL DAMAGES REMEDY BY THE FEDERAL COURTS

Every court to hold that a defendant has violated any provision of CROA has awarded actual damages to the victims. *See* Plfs. Opening Br. at 23-25 (collecting judgments). Liable Defendants do not dispute the unanimous agreement of the federal courts with Plaintiffs' interpretation of the CROA actual damages remedy.

Instead, Liable Defendants claim that the Arbitrator was not required to follow the case law interpreting CROA's actual damage remedy because this case presents damages issues of "first impression." Resp. at 30. The novel issue they raise is whether payments for DMP services, including payments labeled

"voluntary," qualify as "any amounts paid" under 15 U.S.C. § 1679g(a)(1)(B).[3] Even had the Arbitrator suggested that this was an issue of first impression, which he did not, it is not.

The federal courts have considered whether consumer payments for DMP services qualify as payments under CROA, even when the credit repair organizations labels such payments "voluntary." The Arbitrator was aware of all three decisions. Addressing a similar credit repair scheme, the federal courts granted judgment to a certified class of consumers under CROA. *Zimmermann v. Cambridge Credit Counseling Corp.*, 529 F. Supp. 2d 254 (D. Mass. 2008), *aff'd*, *Zimmerman v. Puccio*, 613 F.3d 60, 69 (1st Cir. 2010). Actual damages exceeding $256 million were calculated by the amounts paid to the credit repair defendants by the certified class pursuant to 15 U.S.C. § 1679g(a)(1)(B). *Id.*

The same CROA issues were addressed and resolved by a court in this Circuit. In *Polacsek v. Debticated Consumer Counseling, Inc.*, 413 F. Supp. 2d 539 (D. Md. 2005), Judge Messitte was confronted with another DMP credit repair scam where "consumers 'voluntary contributions'" were used to fund the defendants' DMP operations. *Id.* at 542. The class members' DMP contracts in

---

[3]     Liable Defendants endorse the Arbitrator's view that they escape responsibility by calling consumer DMP payments "voluntary contributions." Clearly, "Congress cannot have intended unscrupulous credit repair organizations to have such easy access to CROA immunity." *Zimmerman v. Cambridge Credit Counseling, Corp.*, 409 F.3d 473, 477 (1st Cir. 2005).

that case provided that the consumers "voluntarily agree to make a one-time non-refundable 'counseling' contribution [to the CCA]…." *Id.* at 548. "The agreements further solicited a voluntary 'monthly contribution'" and even provided that the defendants "would provide assistance whether or not the 'contributions' were made." *Id.* at 548-49. Even though the "contributions" were "voluntary," the *Polacsek* court held that under CROA, "Debticated, the non-Defendant CCAs, and DebtWorks, moreover, sold, performed and provided credit repair services in return for the payment of money." *Id.* at 548. ***"In other words, the 'contributions' were payments for services."*** *Id.* at 549 (emphasis added). *Cf. FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 455 (D. Md. 2004). This Court assisted the recovery of the classes' CROA judgment in the related *Polacsek / Ameridebt* cases. *See Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359 (4th Cir. 2010), *cert. denied*, 2011 U.S. LEXIS 147 (2011).

Liable Defendants suggest that the CROA issues in this case are different than in *Polacsek*. Resp. at 30, n. 11. But the Arbitrator disagreed. In his award certifying the class, the Arbitrator stated, "this Arbitrator finds the reasoning of Judge Messitte of the District of Maryland in *Polacsek*, *Ibid*, to be excellent guidance, factually similar and analytically correct." A. 288.

The Arbitrator's refusal to award actual damages under CROA to the victim Class stands alone nationwide as failing to apply CROA's actual damage remedy as drafted by Congress and unanimously interpreted by the courts.

### C.     THE ARBITRATOR DENIED DEFENDANTS' PRIVITY OF PAYMENT DEFENSE

Liable Defendants argued in the Arbitration that they were not CROs because they did not *directly* receive payments from the Class for their credit repair services.   The Arbitrator rejected that defense.   A. 53-54 (¶ 114; "I find and conclude that this defense falls."). That ruling was confirmed by the District Court's Final Judgment.  A. 441.  Liable Defendants neither opposed confirmation, nor appealed that ruling.   Undeterred, they improperly repeat on appeal their rejected "privity of payment" defenses.   Resp. at 27, 35.

The Arbitrator held that Dancel, Amerix, Careone and 3CI were each CROs. A. 49-50 (¶¶ 87, 91, 93, 95).  A CRO is defined in Section 1679a(3) as someone who has received, "*payment* of money or other valuable consideration, for the express or implied purpose of – (i) improving any consumer's credit record, credit history, or credit rating; or (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i) ...." 15 U.S.C. § 1679a(3). Liable Defendants argued that they were not CROs because neither the so-called "voluntary contributions" nor "fair share payments" were paid to them directly by the Class.  *See* A. 53 (¶ 110; "Respondents argue Amerix is not a CRO because it

did not have a contractual relationship with, and was not paid valuable consideration by, consumers."). The Arbitrator disagreed. A. 53-54 (¶¶ 111–114). The Arbitrator further held that Liable Defendants did receive "payments" attributable to the Class. *See* A. 56 (¶ 125; "The fair share payments did not flow from the consumers to the Respondents. Nonetheless, I do believe they are "payments" under § 1679a, since they were payments from the consumers' creditors for the purpose of helping the consumer with credit card problems. They were part and parcel of the overall commercial transactions between the several parties to the multi-party deal.").

When the Arbitrator held in Paragraph 194 of the Liability Award (A. 69) that Section 1679g(a)(1)(B) necessitated "required payments" to Liable Defendants, he failed to reconcile that *he already held* that such required payments *were made* to Liable Defendants sufficient to hold them to be CROs under Section 1679a(3). Liable Defendants try to explain away the "inconsistency" of the Arbitrator's rulings by arguing that they received their payments from Genus and AFS, rather than the Class directly. Resp. at 26-27. They argue on appeal (contrary to their position in the Arbitration) that such "payments" *were* sufficient under Section 1679a(3), but not Section 1679g(a)(1)(B). That is the same privity of payment argument rejected by the Arbitrator.

10

**D.    DEFENDANTS CANNOT ESCAPE THE ARBITRATOR'S RULING THAT FAIR SHARE PAYMENTS TO THEM ARE CROA ACTUAL DAMAGES**

The Arbitrator held that the considerable "fair share" payments made to Liable Defendants by the Classes' creditors were "payments" for credit repair services attributable to the Class members' DMP participation. *See* A. 56 (¶ 125). As an "amount paid" under Section 1679g(a)(1)(B), the fair share payments to the Liable Defendants must awarded to the Class as CROA actual damages. *See* Plfs. Opening Br. at 31-35. Liable Defendants fail to address why the Arbitrator's Fair Share damages rulings need not be vacated as contrary to this Court's decisions in *Gunnells v. Healthplan Servs. and Brown v. Nucor Corp.* To the extent that further evidence on the *amount* of each class members' damages was needed *after* the Arbitrator held that Liable Defendants violated CROA, Liable Defendants should be required to provide it. The Final Award necessitates that result.

Liable Defendants attack the Arbitrator for ruling that the Fair Share payments to them by the Classes' creditors were CROA actual damages as "perplexing." Resp. at 33. They believe the Arbitrator should have been constrained by the Plaintiffs' arguments seeking a return of the Classes' so-called "voluntary contributions" paid to Liable Defendants. *Id.* However, it was unnecessary for the Class to focus on a refund of the Fair Share payments when Liable Defendants repeatedly represented they could not afford to repay a fraction

of the so-called "voluntary" payments.  *See* A. 342.  While Liable Defendants claim "waiver" by the Class, the Arbitrator disagreed, and this ruling was confirmed by the District Court.  A. 441.  While Liable Defendants' waiver arguments are foreclosed by their failure to oppose confirmation or appeal the Final Judgment, CROA's explicit anti-waiver provision is fatal to their waiver arguments.  15 U.S.C. § 1679f(a) ("Any waiver by any consumer of any protection provided by or any right of the consumer under this title -- (1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person."); *accord CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012).

Even while finding the Fair Share payments to Liable Defendants qualified as CROA actual damages, the Arbitrator did not award any actual damages to the Class.  A 68, 70 (¶¶ 191, 196, 197).  His stated reason was that the record did not reflect the precise *amount* of actual damages owed to each class member.  *Id*.  That ruling is contrary to decisions by this Court directing a determination of the amount of damages after a finding of liability.  *See Brown v. Nucor Corp*., 2009 U.S. App. LEXIS 22224, *28 (4th Cir. Aug. 7, 2009); *Gunnells v. Healthplan Servs*., 348 F.3d 417, 427-28 (4th Cir. 2003).  Liable Defendants do not respond, thereby conceding the Arbitrator's errors.  More egregious still, the Arbitrator ruled during the Final Hearing that he *would* conduct further proceedings after

finding liability to determine the amount of damages. A. 177 (2860:11-19). Yet, after he found liability under CROA, he ignored that ruling.[4]

The Arbitrator could also have entered an aggregate damages award to the certified class, as done in other certified CROA class actions. *See Zimmerman*, 613 F.3d at 69. The amount of Fair Share paid to Liable Defendants was in the Final Hearing record from their own interrogatory responses. Plfs. Opening Br. at 32-33; A. 588-589. Liable Defendants respond that their interrogatory responses do not exactly recite the aggregate Fair Share payments paid to them on behalf of the Class. Resp. at 34-35. The procedure required by *Gunnells* and *Brown* exists to resolve these precise issues. The victim Class is entitled to their statutory damages, even if the exact amount cannot be determined with absolute certainty. *See Great Coastal Express, Inc. v. Int'l Brotherhood of Teamsters*, 511 F.2d 839, 845 (4th Cir. 1975) ("where the amount of damages cannot be ascertained with certainty, 'it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.'") (quoting *Story Parchment Co. v. Paterson Parchment Co.*, 282 U.S. 555, 563 (1931)).

---

[4] During the Final Hearing, Liable Defendants' witnesses testified that the amount of Fair Share paid to them on behalf of each Class member was retained and could be determined from their computer databases. A. 413-14 (3793:11 to 3794:21); A. 420-21 (1662:8 to 1663:21).

13

The Class is entitled to CROA actual damages in the amount of Fair Share paid by their creditors directly or indirectly to Liable Defendants, either in the aggregate or in amounts determined during post-liability discovery.

### E. MARYLAND LAW RENDERED VOLUNTARY CONTRIBUTIONS ILLEGAL DURING THE CLASS PERIOD

Amici's brief details the legislative history behind the Maryland law enacted in 2003 to target Liable Defendants' consumer abuses. Doc. No. 37 at 10-12. Thereafter, AFS was informed it was violating the statute by collecting "voluntary contributions," most of which were paid to Liable Defendants. A. 182. The Arbitrator held that Maryland law governed the Classes' DMP agreements. A. 30-31 (¶ 8). He knew that the Maryland statute rendered voluntary contributions for DMP services illegal. A. 74-75 (¶ 229); Md. Fin. Instit. Code Ann. §§ 12-916(b) and 12-918(f)(1). Liable Defendants term the Maryland statutory prohibition of their business practices "irrelevant." Resp. at 31. However, the Maryland statute demonstrates that the Arbitrator's ruling that Class members' DMP payments were "voluntary contributions" was either impossible or illegal, certainly after 2003.

## II. THE ARBITRATOR SUBSTITUTED HIS PERSONAL NOTIONS OF JUSTICE FOR CROA'S REMEDIES THAT HE BELIEVED WERE OVERLY "HARSH"

The Arbitrator recites his undisguised admiration for Dancel and his intention to preserve Dancel's business and assets. He notes that: "Mr. Dancel was, himself, a credit counselor in his early years … [and] like many of

Respondents' customers … needed assistance in working his way out of his financial difficulty. This he has done with great success." A. 35 (¶ 28). He expressed admiration that, "Mr. Dancel is an extraordinary businessman who has developed a highly-successful business covering virtually all aspects of credit counseling." A. 36 (¶ 31). The Arbitrator notes, "Respondents' testimony [] that Mr. Dancel started out to do good and stayed on to do both good and well." *Id*. The Arbitrator brushed aside contrary conclusions in IRS and Congressional investigations. A. 51, 52 (¶¶ 101, 106); *But see* A. 446-459 (IRS audit); A. 473-564 (IRS audit); District Court Doc. No. 27-3 (U.S. Senate subcommittee report).

Given the Arbitrator's positive view of Dancel and the enterprises he controlled, it is hardly surprising that the Arbitrator believed the "majority rule" of the federal courts applying CROA "seems harsh to me." A. 48 (¶ 85). He let his personal view of whether Dancel was "unscrupulous" affect his application of 15 U.S.C. § 1679g(a)(1)(B). *Id*. The Final Award was crafted not to put "Respondents out of business nor into bankruptcy." A. 83 (¶ 14).

An Arbitrator's decision that substitutes his own notions of justice or "policy choice[s]" for the application of law must be vacated. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Co*rp., 559 U.S. 662, 671, 676-77 (2010); *Dewan v. Walia*, 544 Fed. Appx. 240, 246 (4th Cir. 2013) (quoting *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006)). That is precisely what happened here.

Liable Defendants respond that "nothing in the record" suggests that the Arbitrator's rulings were colored by his personal notions of justice. Resp. at 29, n.10. They are wrong. His quoted rulings state his personal views. Those views further explain why he ignored his Final Hearing ruling that he would require post-liability discovery to the ascertain the amount of damages owed to Class. A. 177 (2860:11-19). His policy choice to avoid application of CROA because its seemed "harsh," also explains why he awarded no attorneys' fees or costs to Class Counsel after indicating just months earlier that a fair award would include "several million dollars in attorneys' fees, as well as the costs." A. 80-81 (¶ 4).

## III. THE ARBITRATOR KNOWINGLY FAILED TO APPLY THE ATTORNEYS' FEES STANDARDS REQUIRED BY CROA, *JOHNSON* AND *PERDUE*

The Arbitrator's Fee Award rests on his findings of limited success, even while holding that the Class prevailed in proving violations of CROA Sections 1679c, 1679d, 1679e and 1679b(b). A. 46- 49, 53-54, 68, 57, 70-71 (¶¶ 73, 80, 85, 86, 113-115, 128, 191, 199). The Arbitrator further acknowledged that the Class prevailed on nearly all "core" issues and motions preceding the Final Hearing. A. 95 (¶ 15); *see also* A. 29 (¶¶ 2, 3). Those "core" pre-Final Hearing issues included prevailing on motions for clause construction, class determination / certification, motions to decertify the Class and motions to dismiss the case or for summary

judgment. Class Counsel also completed extensive discovery on CROA liability, class certification and whether Liable Defendants were CROs.

When a claimant succeeds in arbitration under a fee-shifting statute, like CROA, an arbitrator must apply "the same fee calculation methods as the courts." *Porzig v. Dresdner, Kleinwort, Benson, N.A., LLC*, 497 F.3d 133, 141 (2d Cir. 2007).[5]  CROA supplies a Congressional mandate that parties that violate CROA pay reasonable attorneys' fees and costs to their victims.  The *Johnson* factors and *Perdue* lodestar standards provide courts and arbitrators with the required standards to determine the "reasonableness" of fee-shifting awards. The Arbitrator disregarded each of these standards, instead using a "machete" to reduce Class Counsel's lodestar for a successful nine-year litigation and arbitration to $0.  The Fee Award does not adhere to any of the required standards, and must be vacated.

## A.  THE ARBITRATOR KNOWINGLY FAILED TO COMPLY WITH CROA'S STATUTORY MANDATE TO AWARD REASONABLE ATTORNEYS' FEES

CROA states that liable defendants "shall be" liable for the payment of attorneys' fees to counsel that successfully prosecute violations of the statute.  15 U.S.C. § 1679g(a)(3).  The Arbitrator was not permitted to ignore CROA just

---

[5]  Liable Defendants cite the "abuse of discretion" standard of review that applies to a *district court* fee decision.  Resp. at 37, 55, n.15.   That standard is inapplicable on this appeal insofar as the fee decision was not made by the District Court. Liable Defendants concede that the District Court's short decision and order below did *not* render any findings of fact or law.  *Id.* at 55.  The standard of appellate review for a motion to vacate an arbitral award is *de novo*.  *Id*. at 14, 55.

because this case was referred to arbitration. *CompuCredit*, 132 S. Ct. at 671. CROA's statutory remedies include the right of successful litigants to be paid reasonable attorneys' fees and costs.

### B. THE ARBITRATOR DID NOT CONSIDER AND EXPLAIN HIS ATTORNEYS' FEE ANALYSIS UNDER THE *JOHNSON* FACTORS

Liable Defendants concede that the Arbitrator did not apply the twelve *Johnson* factors. At best, they contend, the Arbitrator "implicitly" (Resp. at 53) applied eight of the twelve factors and ignored the remaining four factors. The Fee Award does not mention *Johnson* or the *Johnson* factors, even though Claimants put the issue squarely before him. *See* Plfs. Opening Br. at 45-47. Liable Defendants dismiss the *Johnson* factors as "immaterial" and mere "guidelines" that need not be considered or discussed. *Id*. at 54.[6] This Court's decisions hold the contrary. Liable Defendants ignore completely those decisions cited by Plaintiffs. *See* Plfs. Opening Br. at 43-44. The failure by the Arbitrator to consider, *and explain*, the attorneys' fees analysis under twelve *Johnson* factors requires vacatur.

In this Circuit, courts *must* consider and discuss the twelve *Johnson* Factors. *See EEOC v. Service News Co.*, 898 F.2d 958, 965 (4th Cir. 1990) (noting that in *Barber v. Kimbrells, Inc.* "we held that courts must consider and discuss the twelve factors set forth in *Johnson []* to establish a reasonable fee."). A cursory or

---

[6]    Liable Defendants do not cite any decisions from this Circuit holding that the *Johnson* factors are merely guidelines.

conclusory review of these factors is not sufficient. *See*, *e.g.*, *Best Med. Int'l, Inc. v. Eckert and Ziegler Nuclitec GmbH*, 505 Fed Appx. 281, 284 (4th Cir. 2013) (vacating and remanding the district court's fee award for applying the *Johnson* factors "in only the most conclusory manner"). The Arbitrator's application of the *Johnson* factors does not even rise to a "conclusory" level. Even the *McAfee* decision cited by Liable Defendants agrees that the *Johnson* factors must be considered and explained. *McAfee v. Boczar*, 738 F.3d 81, 90 (4th Cir. 2013) ("Predicated on these distinctions, we limit our analysis to ensuring that the court's application of the *Johnson* factors was a reasonable one and that it did not inappropriately weigh any particular factor.").[7] Without discussion of the twelve *Johnson* factors there is no way to determine whether the Arbitrator made a reasonable fee award.

The Arbitrator failed to mention or discuss *any* of the *Johnson* factors. Liable Defendants attempt to minimize the Arbitrator's failures by claiming that the Arbitrator may have "implicitly" considered eight of the twelve factors. Resp. at 53. Even they concede he ignored the rest. One of admitted-omitted factors was attorneys' fee awards in similar cases. Consideration of this factor in other CROA class actions militates in favor of a substantial attorneys' fee award. *See*

---

[7]     While the Arbitrator's Fee Award also does not mention *McAfee*, this Court recently approved the *McAfee* methodology that incorporates use of the *Johnson* factors to determine reasonableness of a fee award. *See Jones v. Southpeak Interactive Corp.*, 2015 U.S. App. LEXIS 1114, *35-38 (4th Cir. Jan. 26, 2015).

*Zimmermann v. Cambridge Credit Counseling Corp.*, D. Mass. Case No. 03-30261 (MAP), *Judgment Order* (Dkt. No. 420) (D. Mass. Mar. 18, 2009).

At best, the Arbitrator picked and chose some factors to consider and ignored the rest, substituting his own "general" approach and disregarding "objective standards." A. 104 (¶ 36). This approach exceeded his authority and warrants vacatur. *See Rum Creek Coal Sales v. Caperton*, 31 F.3d 169, 180 (4th Cir. 1994) (concluding that "by considering improper factors and failing to take into account other applicable *Johnson* factors, the district court erred."). This is not a case where the Arbitrator applied the law but merely did a poor job. The Arbitrator simply ignored the *Johnson* factors altogether.

### C.   THE ARBITRATOR IMPROPERLY REJECTED THE *PERDUE* LODESTAR STANDARDS

Liable Defendants cannot decide whether the Arbitrator applied the Supreme Court's lodestar rules set forth in *Perdue v. Kenny A.*, 559 U.S. 542, 130 S. Ct. 1662 (2010), or not. First they argue that the Arbitrator did apply the *Perdue* standards. Resp. at 51. ("The Arbitrator did not refuse to follow *Perdue*."). The *Perdue* Court recited the standard for lodestar fee cases:

> Instead, there is a "strong presumption" that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee.

*Perdue*, 559 U.S. at 553-54; *accord City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). However, they ultimately concede that, "the Arbitrator did not find *Perdue* applicable to the case before [him] and yet chose to ignore it in propounding [his] decision." Resp. at 52. (internal citations and quotation marks omitted; modifications in original).

Like the Arbitrator, Liable Defendants argue that *Perdue* is inapplicable to cases where only a reduction (and not enhancement) of successful counsel's lodestar is sought.[8] They each rely on *Jackson v. Estelle's Place*, LLC, 391 F. App'x. 239, 244 (4th Cir. 2010). A.97 (¶ 20); Resp. at 51-52. But *Estelle's Place* does not that hold that the *Perdue* standards are inapplicable when the court is considering a reduction of lodestar. To the contrary, in considering a 25% fee reduction, the *Estelle's Place* court held that the district court complied with the *Perdue* standards. *Id*. As even *Estelle's Place* demonstrates, this Circuit and its district courts apply the *Perdue* standards when considering whether to reduce an attorneys' fee award. *See Eastern Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561, 570 (4th Cir. 2013); Plfs. Opening Br. at 41 (citing cases).

Liable Defendants are incorrect that this Circuit has rejected application of *Perdue* when only a reduction of a fee-shifting award is being considered.

---

[8]     Class Counsel did not seek any enhancement of their lodestar. A. 97 (¶ 19).

### D.     THE FEE AWARD DID NOT RELY ON THE *FAIR HOUSING* DECISION

The Arbitrator did not award attorneys' fees as mandated by CROA. He did not consider or explain any of the twelve *Johnson* factors and rejected the *Perdue* lodestar standards. Liable Defendants argue the Arbitrator relied on the "opening bid" standard discussed in *Fair Housing Council v. Landow*, 999 F.2d 92 (4th Cir. 1993). Resp. 39-40. However, the Arbitrator expressly held his fee ruling was *not* premised on that standard. A. 91-92 (¶ 9; discussing Defendants' entreaty to apply the *Fair Housing* "opening bid" standard, "I elect not to do so."). Instead, the Arbitrator applied his own "general" views on the reasonableness of the motion for attorneys' fees and costs. A. 100 (¶ 24). Applying his "general" methods, the Arbitrator "used a machete rather than a scalpel, and concepts rather than calculators." A. 104 (¶ 36).

Liable Defendants search to justify the Arbitrator's approach. In most instances they overreach, attributing conclusions to the Arbitrator's analysis where none exist. *See* Resp. 41-44. For example, although apparently believing Class Counsel's rates were too high, even in light of the twenty-three supporting fee affidavits submitted by Class Counsel (A. 431-32; ¶¶ 10-17), the Arbitrator did not reach any conclusion as the appropriate hourly rates to apply Class Counsel's

lodestar calculation.[9]  Liable Defendants are also wrong that the Arbitrator ruled in their favor, or in any definitive manner, on the issue of block billing.[10]  The Arbitrator rejected the 20% block billing reduction suggested by Liable Defendants, A. 101 (¶ 26), finding there to be only "some merit to these contentions [of recording inadequacies], and some adjustment of the claims is warranted as a result."  A. 101 (¶ 25).  However, the Arbitrator never supplies the "some reduction" percentage he references to complete a reasoned analysis.

Contrasting Liable Defendants' laundry list of conclusions that the Arbitrator did not make, the Arbitrator did conclude that Class Counsel successfully prosecuted a host of "core" issues during the course of this long arbitration, accounting for substantial billable time.  A. 95 (¶ 15; "a large amount of time was spent by Class Counsel defending 'core' issues, such as clause construction and class certification [that] were common to all claims and would have been involved even had Claimants sought relief only under the CROA disclosure theory."), A. 95 (¶ 16; "Every claim made by Claimants in this Arbitration had certain common elements of proof.").  Those "core" issues were in

---

[9]     *But see In re Vitamin C Antitrust Litig.*, 2013 U.S. Dist. LEXIS 182701, *11-18 (E.D.N.Y. Dec. 30, 2013) (denying arguments to reduce class counsel's hourly rates in nationwide class action) (decision cited by Liable Defendants).

[10]    *See also In re Vitamin C Antitrust Litig.*, 2013 U.S. Dist. LEXIS 182701, *19 ("reject[ing] categorical challenges to block billing, noting that a flat prohibition on the practice can lead to gross inefficiencies as attorneys spend inordinate amounts of time in record keeping rather than doing legal work.").

addition to successful prosecution of Liable Defendants' CROA liability proved by Class Counsel during and after the Final Hearing.

The Arbitrator failed to apply the CROA fee-shifting statute, the *Johnson* factors or *Perdue* standards. Without that required analysis, this Court is bereft any reasoned analysis to justify the total denial of attorneys' fees and costs.

### E.    THE ARBITRATOR RELIED ON THE VACATED *GULFSTREAM III* DECISION TO SETOFF CLASS COUNSEL'S UNPAID LODESTAR

The Arbitrator's Fee award relies on *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.*, 789 F. Supp. 1288 (D.N.J. 1992). A. 103 (¶ 34). The cited ruling from that district court was vacated by the Third Circuit. *Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 421-23 (3d Cir. 1993); *see also* Plfs. Opening Br. at 53-54.[11] The Arbitrator nevertheless relied on the vacated decision to "setoff" Class Counsel's unpaid lodestar by the fees paid by Genus and AFS in the Interim Settlements. A. 103-04 (¶¶ 34, 36).

Liable Defendants contend that the Arbitrator neither relied on the vacated *Gulfstream III* decision nor ignored the Third Circuit's corrected analysis. Resp.

---

[11]    The Arbitrator's $2,666,000.00 setoff was further error because Class Counsel had voluntary reduced their request by this same amount in their motion for attorneys' fees. A. 430-431 (¶ 8); A. 87, 103 (¶¶ 1, 33). This setoff was the second time the Arbitrator discounted Class Counsel's fees for prosecuting the related claims against AFS and Genus. A. 102-104 (¶¶ 31, 33, 36); Plfs. Opening Br. at 50-51. Double-counting is prohibited. *See Eastern Associated Coal*, 724 F.3d at 570 ("Such double-counting would distort the proper weight to be accorded those factors.").

at 50.  Both contentions attempt to re-write the Fee Award.  *See* A. 103-04 (¶¶ 34, 36).  Equally specious is their claim that the Arbitrator cited *Gulfstream III* only as support for a ruling that prior settlement recoveries "were not relevant in determining the degree of success obtained by Plaintiffs" against Liable Defendants.  Resp. at 50.  To the contrary, the Arbitrator cited the district court *Gulfstream III* decision for its vacated ruling, namely that he could setoff Class Counsel's unpaid lodestar by the amount of the settlement fees paid by AFS and Genus.  A. 103 (¶ 34; "I find and conclude that the fees and expenses received by Class Counsel in settlement of the AFS and Genus claims are set-offs against the amounts sought in the Application.").

Liable Defendants rely on *In re Vitamin C Antitrust Litig*., 2013 U.S. Dist. LEXIS 182701 (E.D.N.Y. Dec. 30, 2013) to save the Arbitrator's reliance on the vacated  *Gulfstream III* decision.  But the Fee Award does not mention the *Vitamin C* decision.  Nor does the *Vitamin C* decision mention the *Gulfstream III* decisions and differs in important respects.  In that case, the plaintiffs' counsel did not reduce their request for attorneys' fees or costs by the amount paid or reimbursed in the prior settlements.  *Id*. at *23-25.  Here, by contrast, Class Counsel sought only payment for their *unpaid* lodestar and costs, A. 430-431 (¶ 8), which included substantial lodestar and costs incurred to successfully prosecute the CROA claims against *only* the Liable Defendants.  Unlike the Arbitrator, the *Vitamin C* court

25

awarded class counsel over $4 million in attorneys' fees payable by the defendants found liable at trial.  *Id*. at *10.  Here, Liable Defendants were found liable after a Final Hearing but are not liable to pay *any* attorneys' fees or costs.

### F.   CROA ALSO PROHIBITS THE ARBITRATOR'S SETOFF OF ATTORNEYS' FEES AND COSTS

CROA Section 1679g(a)(3) requires the *liable parties* to pay reasonable attorneys' fees to the injured consumers. 15 U.S.C. § 1679g(a) (liable parties "shall be liable …").  However, by setting-off the one-third of Class Counsel's attorneys' fees initially awarded by the Arbitrator by the amount of settlement attorneys' fees paid by Genus and AFS in the Interim Settlements, the Liable Defendants were held not liable to pay *any* attorneys' fees (or costs).  A. 104-05 (¶¶ 36, 37).  That result is contrary to CROA and must be vacated.

### G.   DEFENDANTS RELY ON A FALLACY THAT THEY ADMITTED THEIR VIOLATIONS OF CROA SECTIONS 1679C, 1679D AND 1679E

In an effort to dispel Class Counsel's successful prosecution of CROA for the Class, Liable Defendants claim they did not contest liability under CROA Sections 1679c, 1679d and 1679e.  Resp. at 8, 40.[12]  That fallacy is roundly refuted by the Arbitrator's awards.  Liable Defendants offered numerous defenses to

---

[12]     It is inappropriate to adjudge "success" based on, "the total number of issues in a case with those actually prevailed upon" or "simply because the plaintiff failed to prevail on every contention in the lawsuit.  *Jones*, 2015 U.S. App. LEXIS 1114, at *36 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435, n.11).  The Arbitrator made this error, A. 91 (¶ 9), which is repeated by Liable Defendants.  Resp. at 6-7.

liability under all three CROA sections. *See* A. 47-48 (¶ 82; "Respondents counter with a battery of defenses to these charges, starting with the argument that Respondents are not CROs and thus not subject to the terms of terms of CROA."); *see also* A. 38-40, 49-50, 52-54 (¶¶ 38-45, 86-95, 107-114); A. 81-82 (¶¶ 7, 8); A. 321, 330-31. Defendants further opposed class certification of any CROA claims, and appealed their loss in the Arbitration. *Amerix Corp. v. Jones*, 457 Fed. Appx. 287 (4th Cir. 2011); *Genus Credit Mgt. Corp. v. Jones*, D. Md. Case No. JFM-09-1498, Order (D. Md. Sept. 8, 2009). After losing, Liable Defendants filed *three* unsuccessful motions to decertify the CROA Class, before and after the Final Hearing. *See* A. 314-354; *Amerix Corp. v. Jones*, 2012 U.S. Dist. LEXIS 5204 (D. Md. Jan. 17, 2012).

Liable Defendants never conceded their liability under CROA Sections 1679c, 1679d and 1679e. Their myriad defenses was met head-on by Class Counsel and defeated.

## IV.   THE ARBITRATOR'S DENIAL OF COSTS MUST BE VACATED

Liable Defendants do not respond to Plaintiffs' arguments reciting the legal and factual errors requiring vacatur of the Arbitrator's complete denial of costs and expenses to Class Counsel. *See* Plfs. Opening Br. at 55-58. In particular, they fail to address the irrationality of the "same reasoning" applied to reductions in costs as compared to attorneys' fees.

## V.    THE COURTS MUST REMEDY THE DENIAL OF FEDERAL STATUTORY RIGHTS IN ARBITRATION

The parties agree that the District Court did not even try to determine whether the Final Award properly applied CROA's actual damages remedy.   A. 436; Plfs. Opening Br. at 59-60; Resp. Br. at 55.   Liable Defendants term the District Court's "cursory review" as of "no import" because this Court's review is *de novo*.  *Id*.  However, they recite the standard of review in this Court as being completely unconcerned with whether the Arbitrator properly applied CROA's statutory remedy.  Resp. at 14-21.  That view misstates the proper standard.

At least since the Supreme Court's decision in *Gilmer*, it is settled that, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." 500 U.S. at 226 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 628 (1985)); *see also Gilmer*, 500 U.S. at 32, n.4 ("although judicial scrutiny of arbitration awards necessarily is limited, such review is sufficient to ensure that arbitrators comply with the requirements of the statute at issue.") (quoting *McMahon*, 482 U.S. at 232). CROA's remedies are likewise "guaranteed" in arbitration and cannot be waived. 15 U.S.C. § 1679f; *CompuCredit*, 132 S. Ct. at 671-72; *Newton v. Am. Debt Servs*., 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) (failing to calculate damages based on the amounts paid

"deprives Plaintiff of statutory rights found under the Credit Repair Organizations Act").

But who assures that an arbitrator properly applies federal statutory rights? Liable Defendants say no one, criticizing Plaintiffs and *Amici* as endorsing a "stricter standard of review" for arbitral decisions construing federal statutes. Resp. at 17-18, n.6. They take particular aim at *Cole v. Burns Int'l Security Servs., Inc.*, 105 F.3d 1465 (D.C. Cir. 1997), for holding that judicial review must be "sufficiently rigorous" to assure the proper application of federal statutory rights. *Id.* at 1487.

*Cole* cites *Gilmer*, and it is not alone. Most Circuits, including this one, join *Cole* in interpreting *Gilmer* to require a sufficient judicial review to determine whether an arbitrator has *properly* applied federal statutory rights. *See Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 350 (4th Cir. 2008); *Williams v. Cigna Fin. Advisors*, 197 F.3d 752, 759 (5th Cir. 1999); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361, 366 (7th Cir. 1999); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 16 (1st Cir. 1999); *Halligan v. Piper Jaffray, Inc.*, 148

F.3d 197, 204 (2d Cir. 1998). Where federal statutory rights are not applied correctly in arbitration, the award must be vacated. *Id*.; 9 U.S.C. § 10.[13]

## CONCLUSION

Plaintiffs respectfully request relief in this appeal as set forth in Plaintiffs' Opening Brief at pages 61-63.

Respectfully submitted,

**TUSA P.C.**

/s/ Joseph S. Tusa
Joseph S. Tusa
P.O. Box 566
53345 Main Road, Ste. 10-1
Southold, NY 11971
Tel. (631) 407-5100
joseph.tusapc@gmail.com

---

[13] Liable Defendants discussion of the review standards is generally confined to cases reviewing arbitral awards construing disputed contract terms. *See e.g.*, *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2065, 2071 (2013). Even in these cases, the courts' searching analyses reveals that they are frequently concerned with reaching the correct outcome, vacating failures to properly construct disputed contract terms.

**LAW OFFICES OF G. OLIVER
  KOPPELL & ASSOCIATES**
G. Oliver Koppell
John F. Duane
Daniel F. Schreck
99 Park Avenue, Ste. 330
New York, NY  10016
Tel. (212) 867-3838
okoppell@koppellaw.com
dschreck@koppellaw.com

*Attorneys for Plaintiffs
and Class Counsel*

**THE HOLLAND LAW FIRM, P.C.**
Peter A. Holland
910 Towne Centre Blvd., Ste. 250
P.O. Box 6268
Annapolis, MD  21401
Tel. (410) 280-6133
peter@hollandlawfirm.com

**GREGORY S. DUNCAN, ESQ.**
Gregory Duncan
412 East Jefferson Street
Charlottesville, VA  22902
Tel.  (434) 979-8556
gregdun@ntelos.net

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains [*7,025*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[      ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[      ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: <u>February 5, 2015</u>            <u>/s/ Joseph S. Tusa</u>
                                         *Counsel for Appellants*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 5th day of February, 2015 I caused this Reply Brief of Appellants to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Catherine Anne Bledsoe
> Lawrence S. Greenwald
> Brian L. Moffet
> GORDON FEINBLATT LLC
> Garrett Building
> 233 East Redwood Street
> Baltimore, MD 21202
> (410) 576-4198
>
> *Counsel for Appellees*

I further certify that on this 5th day of February, 2015, I caused the required copies of the Reply Brief of Appellants to be hand filed with the Clerk of the Court.

/s/ Joseph S. Tusa
*Counsel for Appellants*